THE STATE, EX REL. CODY, APPELLANT, *v.* TONER, JUDGE, APPELLEE.

[Cite as State, ex rel. Cody, *v.* Toner (1983), 8 Ohio St. 3d 22.]

(No. 83-420—Decided December 7, 1983.)

*Mr. Charles M. Delbaum,* for appellant.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Kenneth J. Knabe,* for appellee.

CLIFFORD F. BROWN, J. It is well-settled that in order for a writ of mandamus to issue, the relators must show: " '(1) that they have a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relators have no plain and adequate remedy in the ordinary course of the law.' " *State, ex rel. Akron Fire Fighters,* v. *Akron* (1978), 54 Ohio St. 2d 448, 450 [8 O.O.3d 443]; *State, ex rel. Harris,* v. *Rhodes* (1978), 54 Ohio St. 2d 41, 42 [8 O.O.3d 36].

The court of appeals held that relator herein has an adequate remedy in

the ordinary course of the law by way of appeal. However, the mere existence of the remedy of appeal does not necessarily bar the issuance of a writ of mandamus. *State, ex rel. Emmich,* v. *Indus. Comm.* (1947), 148 Ohio St. 658 [36 O.O. 265]. The question is whether such remedy is *"adequate under the circumstances."* (Emphasis *sic.*) *State, ex rel. Butler,* v. *Demis* (1981), 66 Ohio St. 2d 123, 124 [20 O.O.3d 121].

In the instant case, if relator must wait for an appeal to establish his alleged right to have court-appointed counsel, he will be denied the opportunity to be legally represented throughout the course of the adjudication and disposition of his case. Accordingly, although relator may ultimately appeal an adverse decision rendered in the paternity action, that remedy cannot be said to be "adequate under the circumstances." *Id.*

We turn then to the principal issue in this case: whether the denial of court-appointed counsel for an indigent paternity defendant who faces the state as an adversary, when the complainant-mother and her child are recipients of public assistance, violates the due process guarantees of the Ohio and United States Constitutions. Based on this court's decision in *Anderson* v. *Jacobs* (1981), 68 Ohio St. 2d 67 [22 O.O.3d 268], we hold that it does.

In *Anderson,* this court held that "denial of blood grouping tests to an indigent paternity defendant, who is unable to prepay for such tests, and who faces the state as an adversary when the complainant-mother and her child are recipients of public assistance, violates the due process guarantee of the Fourteenth Amendment to the United States Constitution. (*Little* v. *Streater* [(1981), 452 U.S. 1], 68 L.Ed. 2d 627, followed.)" In so concluding, this court balanced three factors: (1) the private interest affected, (2) the risk of error if current procedures are used versus the probative value of additional procedural safeguards, and (3) the burden which the proposed additional procedural safeguards would place upon the government. See *Mathews* v. *Eldridge* (1976), 424 U.S. 319, 335.

Applying this analysis to the facts of the present case, we find the following:

First, the private interests implicated here are substantial. As recognized by the United States Supreme Court in *Little, supra,* at page 13: "* * * Apart from the putative father's pecuniary interest in avoiding a substantial support obligation and liberty interest threatened by the possible sanctions for noncompliance, at issue is the creation of a parent-child relationship. * * * Obviously, both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination."

Second, these substantial interests and the integrity of the paternity determination itself could easily be damaged if appellant herein were to be denied counsel during the proceedings. Emphasizing the fact that the paternity case below was initiated at the state's insistence and prosecuted at the state's expense, we realize that appellant is presented with a formidable task if he should be required to defend himself. In *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6 [15 O.O.3d 3], this court held at paragraph two of the

syllabus that, "[i]n actions instituted by the state to [terminate parental rights, the constitutional] * * * guarantees of due process and equal protection of the law require that indigent parents be provided with counsel * * * at public expense for appeals as of right." In reaching this result, this court, at page 7, stated: "* * * Relators cannot effectively appeal without * * * counsel. If Relators continue their appeal *pro se* * * * any appeal will be ineffectively presented." This reasoning is applicable, if not more compelling, with regard to cases at the trial level.[1]

Given the value of the right to blood grouping tests (available under R.C. 3111.09[A]), which right could feasibly go unasserted by one unfamiliar with the law, and the likelihood that expert witnesses will be called to testify should blood grouping tests be ordered (see R.C. 3111.09[B]), it appears that one unknowledgeable of his rights and unskilled in the art of advocacy could easily go astray in conducting his defense. It can only be assumed that court-appointed counsel would provide adequate protection against these dangers.

Finally, we weigh the state's asserted monetary interest in refusing to provide legal representation for an indigent defendant in a paternity action. Although we understand the state's desire to proceed as economically as possible, the state's financial stake in providing appellant with court-appointed counsel during the paternity proceedings is hardly significant enough to overcome the private interests involved. Instead, protection of the aforementioned substantial interests of the appellant and the integrity of the paternity action itself must be considered as being of utmost importance.

We therefore hold that the denial of court-appointed counsel for an indigent paternity defendant who faces the state as an adversary, when the complainant-mother and her child are recipients of public assistance, violates the ·due process guarantees of the Ohio and United States Constitutions. Since appellant thus has a right to court-appointed counsel, appellee was under a concomitant duty to grant the appellant's motion. There being no adequate remedy in the ordinary course of the law, appellant is entitled to issuance of the requested writ of mandamus.

Accordingly, the judgment of the court of appeals is reversed and the writ is allowed.

*Judgment reversed and writ allowed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., dissents.

---

[1] As stated in *Little, supra,* at page 14, and reiterated in *Anderson, supra,* at page 74, paternity cases are plagued by "the usual absence of witnesses, [and] the self-interest coloring the testimony of the litigants * * *."

HOLMES, J., dissenting. The majority opinion seeks to extend the guarantees of due process to include an indigent paternity defendant who faces the state as an adversary. Since a paternity proceeding is a civil action without criminal overtones, I must dissent.

The United States Supreme Court has clearly established that indigents have the constitutional right to the appointment of legal counsel in those criminal cases where they will be incarcerated if convicted. *Argersinger* v. *Hamlin* (1972), 407 U.S. 25. In addition, such defendants have the right to appointed counsel in appeals as of right. *Douglas* v. *California* (1963), 372 U.S. 353. However, these rights belong only to indigents involved in criminal proceedings. It does not follow that such rights should automatically be granted in civil proceedings, regardless of the importance of the right at stake therein.

As I stated in my dissenting opinion in *Anderson* v. *Jacobs* (1981), 68 Ohio St. 2d 67, at 76 [22 O.O.3d 268], the fundamental purpose of a paternity suit is to identify the father of a child born out of wedlock. The result sought in such an action is to better provide for the child. There is no criminal aspect to the proceeding, nor may an indigent father be later incarcerated for failure to pay child support.

In my view, an indigent paternity defendant has not been denied due process of law when he has had all the procedural hearings afforded to him by law, with the rulings made by a judge upon all necessary points of law and fact. Therefore, we are not required to construe the Due Process Clause as mandating the provision of legal counsel at a civil paternity suit for all those unable to provide such for themselves.

My query in *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6, dissenting opinion, at 15 [15 O.O.3d 3], as to where the right to have appointed counsel at state expense may end, is equally applicable here.[2]

Accordingly, I would deny the writ as there is no clear legal right for its issuance.

---

[2] "Where will the right to have appointed counsel and transcripts at state expense end? Indigent citizens may claim that many other activities or elements of their lives are based upon a constitutionally protected civil right, and seek appointed counsel in a legal proceeding, whether the nature of such proceeding be within the realm of contract, negligence or property law."