KEENEY, APPELLEE, *v.* LAWSON, APPELLANT.

(No. C-830922—Decided November 21, 1984.)

*Mary J. Stafford,* for appellee.
*Bill Markovits,* for appellant.

DOAN, J. This timely appeal follows the trial court's overruling of appellant's Civ. R. 60(B) motion for relief from a judgment of paternity.

The record reveals that plaintiff-appellee, Marjorie Keeney, gave birth to a child, Tamara Keeney, May 14, 1979. Appellee was required by the Hamilton County Welfare Department to identify the father of her child and to commence paternity proceedings in order to remain eligible for Aid to Families with Dependent Children. Appellee was also required to assign her interest in support payments to the welfare department, which has represented appellee throughout these proceedings. The welfare department filed a complaint on behalf of appellee, against appellant, February 9, 1981. It is undisputed that appellant appeared throughout the proceedings unrepresented by counsel.

Appellant initially entered a plea of not guilty to the charge of paternity. A blood grouping test was requested by appellant and was scheduled; however, appellant canceled the blood test. Appellant claimed that he could not afford the blood test as he had been forced to

spend the money he had put aside for the blood test on hospital bills incurred by his common-law wife in giving birth to appellant's son. Subsequently, appellant signed an entry admitting that he was the father of appellee's child. Appellant thereafter began to make support payments.

On October 28, 1983, appellant filed a Civ. R. 60(B) motion for relief from judgment. In his memorandum in support of this motion, appellant argued that he was entitled to relief from the judgment of paternity because he was indigent at the time of the paternity proceedings and therefore he was constitutionally entitled to appointed counsel and a blood grouping test supplied by the state. Appellant further argues that his guilty plea was not knowingly and voluntarily entered as appellant was under the impression that since he could not afford a blood grouping test he had to sign the entry admitting paternity or go to jail. Appellant pointed out that he has only completed formal education through the fourth grade, has an I.Q. of 70, is borderline mentally retarded and can not read. In addition, appellant contended that he believed he was signing an entry that would identify him as the father for the birth certificate only and that he did not understand the support obligation he was incurring. Appellant also argued that he was entitled to relief from judgment because newly discovered evidence showed that appellee admitted she was not sure who was the father, but that the child resembled Gil Huntley, the man with whom appellee had been living at the time of conception.[1] There was also evidence that Huntley had admitted that the child was his.

Appellant's Civ. R. 60(B) motion was heard November 14, 1983. The trial court refused to hear any evidence regarding appellant's lack of representation by counsel and the lack of a knowing and voluntary guilty plea, stating that these issues were "moot." Further, on the issue of appellant's blood grouping test, the court heard only the following testimony:

"The Defendant: Well, I would like to get the blood test, yes.

"The Court: Why don't you get one?

"The Defendant: I can't afford it. I don't have a job.

"The Court: If that's the matter then you're stuck with it. But there's nothing that prevents you from getting one."

After hearing the testimony on the "newly discovered evidence" only, the trial court overruled appellant's motion.

We will initially deal with appellant's fourth assignment of error which alleges:

"The trial court erred to the prejudice of defendant-appellant in denying his motion for relief from judgment, without first holding an adequate evidentiary hearing, where the motion and partial testimony contained allegations of operative facts warranting relief under Civ. R. 60(B)."

To prevail on a motion for relief from judgment, a movant must demonstrate: (1) that he has a defense or claim to present if relief is granted; (2) that he is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) that the motion is made within a reasonable time. *GTE Automatic Electric* v. *Arc Industries* (1976), 47 Ohio St. 2d 146, 150 [1 O.O.3d 86]. Our discussion of appellant's first, second and third assignments of error will demonstrate that appellant has a number of defenses to raise if Civ. R. 60(B) relief is granted. It will also be demonstrated that appellant may be entitled to relief under Civ. R. 60(B)(5),

---

[1] In addition, there was evidence that appellee had engaged in sexual relations with appellant's brother about the time of the child's conception.

which provides for relief from judgment for "any other reason justifying relief from the [operation of the] judgment," as the judgment may have been obtained in violation of appellant's rights under the United States and Ohio Constitutions. As far as the third factor, we find that appellant's motion was made within a reasonable time in light of the circumstances present in the case *sub judice.*

For the reasons set forth in our following disposition of appellant's first, second and third assignments of error, we find that the trial court abused its discretion in limiting the evidence presented at the hearing of appellant's Civ. R. 60(B) motion to the alleged "newly discovered evidence." As shown by our following disposition of assignments of error one, two and three, appellant asserted in his motion factual grounds for relief under Civ. R. 60(B)(5). The trial court abused its discretion in refusing to hear testimony regarding these grounds for relief. Appellant's fourth assignment of error is well-taken.

We will deal with appellant's first and second assignments of error together. Appellant's first and second assignments of error allege that the trial court abused its discretion in overruling appellant's Civ. R. 60(B) motion for relief from judgment where the judgment was obtained in violation of appellant's constitutional rights to counsel and to a blood grouping test. Appellant claims that he was unable to obtain either counsel or a blood grouping test due to his indigency at the time of the original paternity proceedings.

In *State, ex rel. Cody,* v. *Toner* (1983), 8 Ohio St. 3d 22, syllabus, certiorari denied (1984), 80 L.Ed.2d 461, the Supreme Court of Ohio stated:

"The denial of court-appointed counsel for an indigent paternity defendant who faces the state as an adversary, when the complainant-mother and her child are recipients of public assistance, violates the due process

guarantees of the Ohio and United States Constitutions."

In addition, the Ohio Supreme Court held, in *Anderson* v. *Jacobs* (1981), 68 Ohio St. 2d 67 [22 O.O.3d 268], syllabus:

"The denial of blood grouping tests to an indigent paternity defendant, who is unable to prepay for such tests, and who faces the state as an adversary when the complainant-mother and her child are recipients of public assistance, violates the due process guarantee of the Fourteenth Amendment to the United States Constitution. * * *"

It is clear that an indigent defendant who faces the state as an adversary in a paternity proceeding is entitled to both counsel and blood grouping tests provided by the state. The question we must decide is whether the holdings of *State, ex rel. Cody,* v. *Toner,* and *Anderson* v. *Jacobs, supra,* are to be applied retroactively to a paternity proceeding which occurred in 1981.

While Ohio paternity proceedings are characterized as "civil," it has been recognized that such proceedings are more properly characterized as "quasi-criminal." See *Little* v. *Streater* (1981), 452 U.S. 1, 10. See, also, *State, ex rel. Gill,* v. *Volz* (1951), 156 Ohio St. 60 [45 O.O. 63]; *Walker* v. *Stokes* (1977), 54 Ohio App. 2d 119, 126 [8 O.O.3d 237]; *Walker* v. *Stokes* (1975), 45 Ohio App. 2d 275, 278 [74 O.O.2d 396]. The United States Supreme Court set forth the criteria which are to be employed to determine whether a new constitutional rule is to be applied retroactively in criminal proceedings in *Stovall* v. *Denno* (1967), 388 U.S. 293, 297. Retroactivity is to be determined by examining (1) the purpose to be served by the new judicial rule, (2) the extent of reliance on the old rule and (3) the effect of retroactive application of the new rule on the administration of justice.

"Where the major purpose of [a] new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding

function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." (Footnote omitted.) *Williams* v. *United States* (1971), 401 U.S. 646, 653.

The Supreme Court of Ohio recognized in *State, ex rel. Cody,* v. *Toner, supra,* that the right to counsel is critical in paternity proceedings in which a defendant faces the state as an adversary. The *Toner* court, discounting the additional financial burden imposed upon the state by a rule requiring appointed counsel in cases where an indigent defendant faces the state as an adversary in paternity proceedings, stated, at page 23, that "the integrity of the paternity determination itself could easily be damaged" if an indigent defendant was denied counsel during the proceedings. Further, the court stated that "protection of the aforementioned substantial interests of the appellant and the integrity of the paternity action itself must be considered as being of utmost importance." *State, ex rel. Cody,* v. *Toner, supra,* at 24. Therefore, the purpose of the rule requiring counsel is to aid the court in the "truth-finding function."

Like the rule requiring appointed counsel, the purpose of the rule requiring the state to provide blood grouping tests to an indigent defendant who faces the state as an adversary in paternity proceedings is clearly designed to aid the court in the "truth-finding function." Because of the near irrefutability of blood grouping test results, the denial of blood tests could certainly raise "serious questions about the accuracy of guilty verdicts in past trials * * *." *Williams* v. *United States, supra,* at 653. In addition, the Supreme Court of

Ohio has stated that "* * * [t]he general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. * * *" *Peerless Electric Co.* v. *Bowers* (1955), 164 Ohio St. 209, 210 [57 O.O. 411].

For the above reasons, we find that the rules requiring the state to provide appointed counsel and blood grouping tests to indigent defendants who face the state as an adversary in paternity proceedings are to be applied retroactively. Therefore, if appellant was indigent at the time of the original paternity proceedings, he was constitutionally entitled to appointed counsel and blood grouping tests provided by the state. However, we cannot conclude from the record whether or not appellant actually was indigent at the time of the original paternity proceedings.

The record reveals that at the hearing on appellant's motion for relief from judgment, very little testimony was elicited concerning appellant's alleged indigency, due in major part to the trial court's refusal to hear evidence on any issues except the "newly discovered evidence." The evidence presented on the question of appellant's indigency at the time of the original paternity proceedings consisted of appellant's statement that he was forced to spend the money he had put aside for the blood test on medical expenses incurred by his common-law wife in giving birth to appellant's son. Appellant testified as follows:

"The Defendant: Well, I would like to get the blood test, yes.

"The Court: Why don't you get one?

"The Defendant: I can't afford it. I don't have a job.

"The Court: If that's the matter then you're stuck with it. But there's nothing that prevents you from getting one."

It can be argued that this testimony is evidence that appellant was indigent at the time of the original paternity proceedings; however, after a complete reading of the record it appears that appellant was testifying that he was unemployed at the time of the hearing on the motion for relief from judgment. In fact, the bond recognizance form signed by appellant at the time of the original paternity proceedings indicates that appellant was employed.

If, in fact, appellant was indigent at the time of the original paternity proceedings, the trial court abused its discretion in overruling appellant's motion for relief from judgment. Because the record does not establish appellant's indigency, we must overrule appellant's first and second assignments of error. However, the record reveals that the trial court refused to hear evidence as to appellant's denial of counsel and a blood grouping test and thus precluded appellant from establishing his indigency. Therefore, under appellant's fourth assignment of error, the cause must be remanded to the trial court so that evidence can be presented and a determination made as to whether appellant was indigent at the time of the original paternity proceedings.

Appellant's third assignment of error alleges:

"The trial court erred to the prejudice of defendant-appellant in denying his motion for relief from judgment where such motion was based in part upon the lack of a knowing and voluntary guilty plea at the original paternity proceeding."

The record reveals that the trial court refused to hear any testimony regarding whether appellant's guilty plea was knowingly and voluntarily entered. The court stated that it would hear such testimony only if appellant was prepared to argue that he was legally incompetent to enter the plea.

Appellant proffered evidence that he is borderline mentally retarded, has an I.Q. of 70 and is unable to read. Further, appellant testified that he had been under the mistaken impression that if he could not afford a blood test he had to either sign the entry admitting paternity or go to jail. The trial court discounted this evidence and refused to hear any further evidence on the issue of whether appellant's guilty plea was entered knowingly and voluntarily, stating that the evidence had nothing to do with the issue of paternity. We disagree, as the proffered evidence goes to the very heart of the plea of guilty of paternity. We find that it was an abuse of discretion for the trial court to refuse to hear such evidence.

Appellant's third assignment of error must be overruled as the record, in its present state, does not support appellant's allegations. However, the state of the record is due to the trial court's refusal to hear any evidence on whether appellant knowingly and voluntarily entered his guilty plea. While we must overrule appellant's third assignment of error, the cause must be remanded, under appellant's fourth assignment of error, for the presenting of evidence on whether appellant's guilty plea was knowingly and voluntarily entered.

Appellant's fifth assignment of error, alleging that the denial of appellant's Civ. R. 60(B) motion was unreasonable, arbitrary and unconscionable, is subsumed in our disposition of appellant's first, second, third and fourth assignments of error and is therefore overruled.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with law and with this opinion.

*Judgment reversed*
*and cause remanded.*

PALMER, P.J., and KLUSMEIER, J., concur.