THE STATE, EX REL. TELEPHONE CREDIT UNION, INC., *v.* SORIN, SUPT. OF CREDIT UNIONS.

(No. 84AP-139 — Decided December 31, 1985.)

*Parks, Eisele & Bates, Kenneth M. Lapine* and *Patrick Carroll,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Theresa J. Rittinger,* for respondent.

MOYER, J. Relator, the Telephone Credit Union, Inc., has filed this original action requesting that this court issue a writ of mandamus and/or alternative writ of mandamus ordering respondent, Robert A. Sorin, Superintendent of Credit Unions of the Ohio Department of Commerce, to certify amendments to relator's articles of incorporation to the Ohio Secretary of State pursuant to R.C. 1733.07(E).

The alternative writ of mandamus was denied by this court on February 9, 1984. Pursuant to Civ. R. 53(C) and Loc. R. 11, Section 13, of the Tenth District Court of Appeals, the case was submitted without oral argument to referee Jack R. Kullman, who issued a referee's report February 19, 1985, recommending the writ of mandamus be denied. On March 5, 1985, relator filed objections to the referee's report. For the reasons set forth below, we overrule relator's objections, adopt the findings of the referee, and deny the writ of mandamus.

The referee's findings of fact set forth the factual background of this case as follows:

"Relator is an Ohio corporation duly authorized to operate as a credit union in the state of Ohio pursuant to R.C. 1701[.01] *et seq.,* and 1733[.01] *et seq.* In existence for approximately forty-nine (49) years in Cleveland, Ohio, relator's field of membership was initially designed to include all members of the Bell Telephone System presently numbering approximately 18,000. When relator was initially incorporated, the Bell Telephone System was a regulated monopoly.

"* * *

"As a result of the divestiture and deregulation of the telephone industry, relator's board of directors appointed a committee to examine relator's field of membership. Subsequently, this committee recommended amendments to relator's articles of incorporation to allow for inclusion into membership rolls persons employed in telecommunications processing and transmission business outside the Bell Telephone System network, employees of electric and gas utilities, and undefined selected groups with a common bond of association. The committee recommendations were adopted by relator's board of directors on January 20, 1983. * * *

"* * *

"In response to the board's action, relator's counsel was instructed to take necessary steps to amend the articles of incorporation. The procedures for amending articles of incorporation of a state chartered credit union are set forth in R.C. 1733.07 and 1733.33 which provide, in pertinent part, that the proposed amendments must be approved by the voting members of the credit union as well as the superintendent of the division of credit unions of the Ohio Department of Commerce. Upon proper approval, respondent is charged with the duty of certifying the amendments to the Ohio Secretary of State for filing. R.C. 1733.07(E).

"In accordance with the aforementioned procedures, relator's counsel mailed a letter of January 24, 1983 to Mr. Kenneth Roberts, Deputy Superintendent, Credit Union Section, Ohio Division of Securities, detailing the proposed changes, accompanied by a copy of relator's articles of incorporation indicating both existing and proposed articles. Counsel's letter concluded with a request for early approval of the proposed changes in order that relator might submit the proposed amendments to its membership for a vote at the February 1983, Annual Meeting. Counsel's letter was addressed to Mr. Roberts as deputy superintendent since the position of superintendent was vacant at that time. At that time, Mr. Roberts was the highest ranking official in the Division of Credit Unions and responsible for reviewing such credit union amendment requests.

"After reviewing the proposed amendments, Mr. Roberts, on February 1, 1983, mailed what has been characterized as a form letter to relator stating that:

" 'Your proposed amendment to your Articles of Incorporation is acceptable to this office for presentation to your members.

" 'After membership approval, please prepare in duplicate the enclosed Certificate of Amendment to Articles of Incorporation forms and forward same to this office for formal approval, along with your check in the amount of $25.00 made payable to the Secretary of State of Ohio.'

"Relator had ballots and other information printed and mailed to its members prior to the annual meeting on February 26, 1983. Relator estimates that additional costs occasioned by the amendment process approximated $4,000.

"The amendments to relator's articles were approved by the members and, on March 21, 1983, the amendments, appropriate Certificate of Amendment forms, and filing fee were forwarded by relator's counsel to respondent for further action, including expected certification and forwarding to the Ohio Secretary of State. The amendments forwarded on March 21, 1983 did not differ from those previously submitted and accepted by Mr. Roberts for submission to relator's membership.

"Sometime after Mr. Roberts' letter of February 1, 1983, respondent was hired as Superintendent of the Division of Credit Unions. Respondent did not certify the amendments as submitted by relator on March 21, 1983 nor forward same to the Ohio Secretary of State for filing.

"On May 10, 1983, respondent mailed a letter to relator stating that:

" 'Please be advised that we cannot approve the Certificates of Amendment to Articles of Incorporation submitted with legal counsel's letter of March 21, 1983. We cannot blindly approve such requests. We must receive the necessary information in order to properly review such matters before taking action.

" 'Any such request must specifically identify and describe the common bond of association, size, their employment or other organizational affiliation,

geographic location of their residence, property or employment and any pertinent and appropriate information.

" 'Please forward additional information as noted above.'

"Relator submitted the additional information to respondent; however, on June 3, 1983, respondent mailed a letter to relator reaffirming the previous May 10, 1983 non-approval of relator's amendments.

"Relator commenced the instant action on February 6, 1984 contending that respondent abused his discretion in failing to certify the proposed amendments and in failing to forward same to the Ohio Secretary of State for filing."

Relator seeks a writ of mandamus to compel respondent to certify the proposed amendments and submit same to the Ohio Secretary of State for filing.

A writ of mandamus may issue where the relator demonstrates (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State, ex rel. Corrigan,* v. *McAllister* (1985), 18 Ohio St. 3d 239.

The referee found that relator had failed to satisfy both the second and third requirements for issuance of a writ of mandamus. Relator, however, has filed objections to those two findings, concluding that they are erroneous.

The referee found that the relator's proposed amendments were not properly approved by the superintendent, and that therefore a clear legal duty to certify and forward the amendments to the Secretary of State did not exist.

R.C. 1733.01 *et seq.* sets forth the law concerning state-chartered credit unions.

R.C. 1733.02 delegates to the Superintendent of Credit Unions "rule-making power and administrative discretion," subject to the provisions of R.C. Chapter 1733. Discretionary acts dele-

gated to the superintendent include the approval of amendments to articles of incorporation under R.C. 1733.07(D).

Relator sought to expand its field of membership by amending its articles of incorporation, as it is permitted to do under R.C. 1733.05(D)(1). Such amendments are to be made with the approval of the superintendent and, pursuant to R.C. 1733.33, with approval of the credit union's voting membership.

Voting members of a credit union must, under R.C. 1733.33, adopt amendments to articles of incorporation in one of two ways: either by vote of the members at a meeting of members called for the express purpose of amending the articles, or by written approval pursuant to R.C. 1733.11. Relator sought membership approval using the second method, soliciting the membership's vote pursuant to R.C. 1733.11 in conjunction with their February 26, 1983 annual meeting.

Relator argues in its first objection that the respondent's deputy superintendent was authorized to approve, and did in fact approve, proposed amendments to relator's articles of incorporation prior to their submission to the voting membership for approval. Accordingly, relator contests the referee's finding that the form letter of February 1, 1983 was, at best, a preliminary approval, and insists that the state should be estopped from withdrawing said approval. Relator argues in support that the preliminary approval was, in fact, formal approval consistent with statutory standards, legislative intent, custom and usage in the credit union industry, and the policy of the division of credit unions; and that it has detrimentally relied upon respondent's letter of February 1, 1983.

We agree with the findings of the referee and are unpersuaded by relator's arguments. R.C. 1733.07 states, in pertinent part, that:

"Seven or more persons who have a

common bond of association, and a majority of whom are residents of the state, may form a credit union by:

"* * *

"(C) Submitting to the superintendent of credit unions so many copies of the properly executed articles and regulations as he may by rule require, together with a properly executed form appointing a statutory agent in accordance with section 1701.07 of the Revised Code, and the fee required by the secretary of state for filing articles of a credit union.

"(D) *Upon receipt of the documents and fee* described in division (C) of this section, *the superintendent shall have thirty days in which to approve or disapprove the articles and regulations.* An appeal, from an adverse decision of the superintendent, may be made in accordance with sections 119.01 to 119.13 of the Revised Code. *The superintendent shall not approve the articles and regulations unless he determines that they comply with this chapter* and the rules promulgated thereunder and that the credit union, if formed, will be in the interest of its members and the public.

"(E) *Upon approval of the articles and regulations, the superintendent shall certify such approval* of the articles and regulations, *and shall submit the articles to the secretary of state,* together with the form appointing the statutory agent and the required filing fee, and shall return the regulations to the applicant or its representative. The superintendent shall maintain a copy of the articles and regulations as approved." (Emphasis added.)

Under relator's interpretation of R.C. 1733.01 *et seq.,* a preliminary finding by respondent that proposed amendments are in compliance with R.C. Chapter 1733 satisfies one aspect of approval, and after proposed amendments are properly passed by the voting members of a credit union, R.C. 1733.07(E) mandates that, upon receipt of copies of the amendments and the filing fee, respondent must certify and forward the amendments to the Secretary of State for filing. Relator, therefore, views respondent's reversal of its preliminary approval as an abuse of discretion.

Relator's view, however, is inconsistent with the discretionary authority intended to be exercised by the respondent.

R.C. 1733.07(D) prohibits respondent from giving his approval to amendments unless they comply with R.C. Chapter 1733. The statutory standard for approval contemplates more than merely filing documents and a fee, and encompasses a discretionary evaluation to ensure complete compliance with R.C. Chapter 1733. It would be impossible for the superintendent to ascertain complete compliance with R.C. Chapter 1733 and give his approval absent evidence that the amendments to the articles were properly approved by the voting membership of a credit union. Thus, any attempt by respondent to give final formal approval to amendments prior to membership approval would be an abuse of discretion and would contravene requirements of the Revised Code.

It also follows, therefore, that we cannot defer to an administrative practice which, if accorded the finality claimed by relator, would be an abuse of discretion and contrary to law. Respondent's form letter of February 1, 1983 was, at best, a preliminary approval of proposed amendments.

The relator argues that estoppel should nevertheless apply to the preliminary determination that the proposed amendments were acceptable for presentation to relator's members, *i.e.,* that they complied with legal requirements of R.C. Chapter 1733.

Discretionary decisions made by administrators can be changed before final actions are taken, and the superintendent was entitled to reverse his preli-

minary approval. Application of the principles of estoppel, here, would contravene the public duties and statutory rights mandated with respect to respondent's discretionary authority. Specifically, R.C. 1733.07(D) mandates that the superintendent has thirty days after receipt of documents and the filing fee in which to exercise his discretion to approve or disapprove proposed amendments to articles.

Thus, consistent with R.C. 1733.07 (D), respondent's letter of February 1, 1983 required relator to submit a filing fee and a certificate of amendment, which purports to certify proper approval of proposed amendments by voting members, after which "formal approval" could follow.

Furthermore, the statutory approval process, requiring submission of documents and filing fee before respondent's final decision, places the risk of final disapproval, subject to appeal rights, upon relator. Detrimental reliance upon respondent's practice of preliminary approval of proposed amendments notwithstanding, relator was in no worse position than if it had relied on its own judgment before submitting proposed amendments to voting members for approval.

Estoppel against the state is therefore unwarranted under the facts and law at issue in this case.

We agree with the referee's conclusion that:

"* * * Respondent, by law, could not approve or disapprove amendments prior to the receipt of this material, custom and usage or division policy to the contrary notwithstanding. Mr. Roberts, if he in fact had the authority, did not have the discretion to approve relator's proposed amendments in contravention of a provision of the Ohio Revised Code. *Kaneff* v. *Gantz* (1957), 102 Ohio App. 363 [2 O.O.2d 385]."

In light of the above, it is unnecessary to reach the issue of whether Dep-

uty Superintendent Roberts had authority, as the highest ranking official of the division of credit unions, to actually approve amendments to the articles of incorporation. It is sufficient to recognize the discretionary nature of respondent's statutory authority, and the legal and procedural predicates to the exercise of that authority. Respondent had a right to reverse his preliminary decision prior to final formal approval of the proposed amendments, which final approval in any event must follow the submission of required documents and fees.

We agree with the referee that the February 1, 1983 letter from Roberts to relator did not represent an unqualified approval of relator's amendments. Because the proposed amendments were never properly approved, and were, in fact, disapproved after the requisite filings were made, the respondent is not under a clear legal duty to certify the amendments and submit them to the Secretary of State. Accordingly, relator's first objection is overruled.

The referee also found that relator had an adequate remedy at law, a second basis for denying the requested writ of mandamus.

Relator argues in its second objection that a writ of mandamus should issue because it has no adequate remedy at law in light of the facts of this case.

R.C. 1733.07(D) provides, in part, that "* * * [a]n appeal, from an adverse decision of the superintendent, may be made in accordance with sections 119.01 to 119.13 of the Revised·Code.* * *"

Relator claims that R.C. 1733.07(D) is not applicable to the present cause because: first, the mandamus proceeding relates to procedural issues outside the scope of R.C. 1733.07(D) so that the right of administrative appeal thereunder would not arise; and, second, consistent with relator's claim of final approval by letter dated February 1, 1983, the amendments were not a proper subject of appeal when presented to respon-

dent for certification, as no right of appeal attaches to favorable decisions of the superintendent.

The relator has accrued a statutory right to administratively appeal respondent's final decision to disapprove relator's amendments. Not only do the procedural issues raised arise from and fall squarely within R.C. 1733.07, but the essence of relator's complaint is that respondent has wrongly disapproved proposed amendments, a decision comprehended within the scope of R.C. 1733.07(D). The right of administrative appeal, therefore, was available to relator. If the superintendent had abused his discretion, that issue could have been raised on appeal.

In disposing of relator's first objection, we determined that respondent could not have properly approved relator's proposed amendments by letter dated February 1, 1983. Thus, relator's second argument that the amendments were not a proper subject of appeal is without merit.

Relator argues in the alternative that, although there may be a remedy at law, it is not an "adequate" remedy at law. While it is true that relator must appeal to respondent himself, and that a lengthy delay ensued before respondent finally issued formal disapproval of the proposed amendments, an appeal to respondent is nonetheless an adequate legal remedy at law.

In *Withrow* v. *Larkin* (1975), 421 U.S. 35, at 55, the United States Supreme Court held:

"* * * The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' * * *"

See, also, *NLRB* v. *Ohio New & Rebuilt Parts, Inc.* (C.A.6, 1985), 760 F.2d 1443, 1450; *West Virginia* v. *Ohio Hazardous Waste Facility Approval Bd.* (Dec. 3, 1985), No. 84AP-496, unreported, affirmed (1986), 28 Ohio St. 3d 83.

Relator has not provided evidence sufficient to overcome the presumption of honesty and integrity accorded the employees of the Department of Commerce who would hear an administrative appeal.

In addition, R.C. 119.12 affords relator a further appeal from an adverse administrative adjudication to a court of common pleas.

The relator argues that the remedy by way of appeal under R.C. 119.01 to 119.13 "* * * is not adequate when the respondent is under a clear legal duty to perform the act and alternative means of enforcement would result in lengthy delay and serious economic harm."

Respondent, however, is not now under a clear legal duty to act. Furthermore, we cannot overcome the presumption of honesty and integrity in the administrative process by assuming that a lengthy delay will occur and will result in serious harm to relator when relator initiates an administrative appeal. Likewise, the existence of earlier delays does not lead us to the inexorable conclusion that there will be further unwarranted delays.

Relator's citation of *State, ex rel. Cody,* v. *Toner* (1983), 8 Ohio St. 3d 22, to argue the inadequacy of the remedy of appeal in this case is not persuasive. The appeal in that case was inadequate because counsel was unavailable to an indigent defendant in a paternity suit. The threat to substantial pecuniary and liberty interests present in that case are absent here. Mandamus issued in *State, ex rel. Cody,* v. *Toner, supra,* to compel the court to appoint counsel to enable the defendant to present an adequate defense. No similar inability to proceed

through the process of administrative adjudication and appeal afflicts relator here.

We note that the superintendent's earlier failure to act within thirty days was an abuse of discretion that could have been remedied by mandamus. That issue, however, is moot as he finally acted to disapprove the amendments.

We hold, therefore, that the right of administrative appeal under R.C. 119.01 to 119.13 attaches to the superintendent's final decision to reverse preliminary approval, and disapprove proposed amendments to articles of incorporation of a credit union. The superintendent may not be estopped to adhere to his preliminary approval where the discretion to make final decisions is predicated upon receipt of required documents and fees, and where preliminary approval places the credit union in no worse position than if it had relied on its own judgment.

Relator has an adequate remedy at law in the right to an administrative appeal which, despite any intrinsic delay or inconvenience, makes the issuance of a writ of mandamus inappropriate. *State, ex rel. Westbrook, v. Ohio Civil Rights Comm.* (1985), 17 Ohio St. 3d 215, 218. The issuance of a writ of mandamus is not a substitute for the right of appeal. R.C. 2731.05; *State, ex rel. Strauss, v. Court* (1984), 11 Ohio St. 3d 214.

Accordingly, the relator's objections are overruled, the findings of the referee not inconsistent with this opinion are adopted, and the requested writ of mandamus is denied.

*Writ of mandamus denied.*

WHITESIDE and MCCORMAC, JJ., concur.

WHITESIDE, J., concurring. To the extent that the opinion and judgment are predicated upon relator's having an adequate remedy by way of appeal pursuant to R.C. 1733.07(D) and R.C. Chapter 119, I concur therein. However, I find it unnecessary to determine the effect of the preliminary approval of the proposed amendments prior to their adoption by the membership of relator since that issue also could, and should, properly be determined upon an R.C. 119.12 appeal rather than by an action in mandamus.