THE STATE, EX REL. ARMSTRONG ET
AL., APPELLANTS, *v.* HALL,
APPELLEE.

(No. 9-86-4 — Decided May 7, 1986.)

*Wilson & Kochheiser* and *Keith A. Kochheiser,* for appellants.

*J.C. Ratliff,* for appellee.

*Per Curiam.* The Ohio Parentage Act (R.C. Chapter 3111), adopted in 1982, makes no provision for the appointment of counsel or for a transcript at public expense in a paternity action. The Supreme Court recently held in *State, ex rel. Cody,* v. *Toner* (1983), 8 Ohio St. 3d 22, 24, 8 OBR 255, 257, 456 N.E. 2d 813, 815, certiorari denied (1984), 466 U.S. 938, that "the denial of court-appointed counsel for an indigent paternity defendant who faces the state as an adversary, when the complainant-mother and her child are recipients of public assistance, violates the due process guarantees of the Ohio and United States Constitutions." Thus it is clear that a *defendant* in a paternity action is entitled to court-appointed counsel. The issue to be determined here is whether or not the right to court-appointed counsel and a transcript at public expense should extend to a complainant in a civil paternity proceeding.

No authority has been located either in support of or against the proposition that a complainant has a constitutional right to court-appointed counsel and to a transcript at public expense. All the cases located deal with the defendant-appellant's right to court-appointed counsel in paternity proceedings. See, *e.g.,* Annotation (1981), 4 A.L.R. 4th 363.

In determining that a defendant in a paternity action has a right to counsel at state expense, the court in *State, ex rel. Cody* adopted the balancing test set forth in *Mathews* v. *Eldridge*

1

(1976), 424 U.S. 319, 335, for determining whether a due process violation has occurred. The court balanced three factors: (1) the private interest affected, (2) the risk of error if current procedures are used versus the probative value of additional procedural safeguards, and (3) the burden which the proposed additional procedural safeguards would place upon the government. Applying these factors to the facts presented, the court reasoned as follows at 8 Ohio St. 3d at 23-24, 8 OBR at 256-257, 456 N.E. 2d at 814-815:

"First, the private interests implicated here are substantial. As recognized by the United States Supreme Court in *Little, supra,* page 13: '* * * Apart from the putative father's pecuniary interest in avoiding a substantial support obligation and liberty interest threatened by the possible sanctions for noncompliance, at issue is the creation of a parent-child relationship. * * * Obviously, both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination.

"Second, these substantial interests and the integrity of the paternity determination itself could easily be damaged if appellant herein were to be denied counsel during the proceedings. Emphasizing the fact that the paternity case below was initiated at the state's insistence and prosecuted at the state's expense, we realize that appellant is presented with a formidable task if he should be required to defend himself. In *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6 [15 O.O. 3d 3], this court held at paragraph two of the syllabus that, '[i]n actions instituted by the state to [terminate parental rights, the constitutional] * * * guarantees of due process and equal protection of the law require that indigent parents be provided with counsel * * * at public expense for ap-

peals as of right.' In reaching this result, this court, at page 7, stated: '* * * Relators cannot effectively appeal without * * * counsel. * * * If Relators continue their appeal *pro se* * * * any appeal will be ineffectively presented.' This reasoning is applicable, if not more compelling, with regard to cases at the trial level.

"* * *

"Finally, we weigh the state's asserted monetary interest in refusing to provide legal representation for an indigent defendant in a paternity action. Although we understand the state's desire to proceed as economically as possible, the state's financial stake in providing appellant with court-appointed counsel during the paternity proceedings is hardly significant enough to overcome the private interests involved. Instead, protection of the aforementioned substantial interests of the appellant and the integrity of the paternity action itself must be considered as being of utmost importance." (Footnote omitted.)

Two factors distinguish *State, ex rel. Cody* from the instant case. *State, ex rel. Cody* applied to the appointment of counsel for a *defendant* in a paternity action and secondly involved appointment of counsel at the *trial* level before any hearing on the merits.

A situation analogous to the right to counsel issue in paternity actions arose in *Lassiter* v. *Dept. of Social Services* (1981), 452 U.S. 18. *Lassiter* involved an appeal by the natural mother (defendant) from a judgment terminating her parental rights. The natural mother was not represented at the trial by counsel. The court stated at 26-27:

"In sum, the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an in-

digent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."

The Supreme Court balanced the interests listed in *Mathews* v. *Eldridge, supra,* against this presumption and concluded that a trial court's duty to appoint counsel for an indigent defendant in a case to terminate parental rights depends upon the facts of the case. The court in *Lassiter* noted first that the parent faced no allegations of abuse or neglect upon which criminal charges could be based. Second, the court stated that the case presented no complex procedural or substantive problems. The court acknowleged that an attorney may have more eloquently argued the natural mother's case, but concluded that the mother's overall lack of interest in her child could not be overlooked. In view of all the circumstances, the Supreme Court held that the trial court did not err in failing to appoint counsel for the natural mother.

The analysis used in *Lassiter* and *State, ex rel. Cody* may be beneficial here. When examining the circumstances of the instant case, it is observed that the mother and child were represented by counsel at the trial. Apparently the mother's and child's interests were represented at every stage of the proceedings below. It is also clear that the mother and child will not be deprived of their physical liberty should their appeal fail.

Turning next to the competing interests in this case, it is noted that the state's interest is twofold. First, the state has an interest in securing a means of financial support for the child other than public assistance. Second, the state has an interest in avoiding the incurrence of the expenses of an appeal by the mother and child. The mother's interest is to obtain financial support from the putative father for the expenses of the pregnancy and for raising the child. The child's interests are to receive the financial support that is rightfully hers and to establish a parent-child relationship with her father. These interests must be balanced according to *Mathews* v. *Eldridge* to determine if due process requires appointment of counsel in this case.

The balancing test leads to the conclusion that the mother's interests may not be strong enough to entitle her to a constitutional right to court-appointed counsel in this case. She will not be denied her rights to due process and equal protection of the laws since she has already received a full and fair hearing on this matter. Additionally, other means of legal assistance are available to the mother through the various legal aid organizations in the area.

The individual whose interests are in the greatest need of protection in this matter is the child. The child seeks not only financial support but the possibility of a relationship with her natural father. Because the establishment of a family relationship is at stake here, the child's guardian ad litem should be appointed as her counsel to safeguard the child's interest. If counsel is appointed for the child, the mother would undoubtedly benefit because their interests are similar.

*Judgment accordingly.*

GUERNSEY, P.J., COLE and MILLER, JJ., concur.