DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Richard Caycedo has appealed a judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that established paternity; calculated past child support and current child support; ordered payment on child support arrears and current support; and ordered repayment and payment for medical expenses. This Court reverses.
 I {¶ 2} On October 24, 1992, Plaintiff-Appellee Judy Post ("Mother") gave birth to Taylor Lauren Post ("Taylor"). In early 1993, Mother filed a motion for child support against Defendant-Appellant Richard Caycedo ("Appellant"). No order or journal entry was filed on Mother's motion.[1]
 {¶ 3} On June 4, 2001, the Child Support Enforcement Agency ("CSEA") filed a complaint to establish a parent/child relationship between Appellant and Taylor. The complaint also requested 1) judgment for all medical expenses for the pregnancy, delivery, and postnatal care of Taylor; 2) a judgment for past support of Taylor; 3) an order for current support of Taylor; 4) an order that Appellant obtain health care and medial care coverage for Taylor; and 5) any other relief to which Mother may be entitled. Appellant answered the complaint denying the allegation that a parent/child relationship existed. Appellant also argued against CSEA's requests for judgments and orders.
 {¶ 4} On November 15, 2001, the parties agreed to genetic testing. A DNA sample from Appellant, an airline pilot from Texas, was collected in Texas. Samples from Mother and Taylor were collected in Summit County. The genetic test results, which became available on January 8, 2002, found a 99.99% probability that Appellant was Taylor's father. On January 11, 2002, Appellant objected to the test results citing unspecified gross irregularities in the test procedures and errors during the testing.
 {¶ 5} Due to a chain of custody issue, the magistrate denied CSEA's request to have the test results admitted into the record. The magistrate informed CSEA and Mother that to have genetic test results admitted either someone from the Texas lab must appear and testify or a request must be made for genetic tests to be conducted in Ohio. On May 9, 2002, CSEA filed a motion for genetic testing to be conducted in Ohio. The trial court ordered Appellant to come to Ohio for the testing.[2]
 {¶ 6} After Appellant failed to appear for at least three scheduled genetic tests, CSEA filed a motion for default judgment against Appellant. Prior to the trial court's ruling on the motion, Appellant appeared for the testing. On September 25, 2002, the second genetic tests results determined that there was a 99.99% probability that Appellant was Taylor's father. No objections to the test results were filed.
 {¶ 7} On December 3, 2002, Appellant's counsel filed a motion to withdraw as counsel. On December 9, 2002, the trial court granted counsel's motion. Appellant promptly obtained new counsel. On January 21, 2003, Appellant's new counsel filed a motion to withdraw based on Disciplinary Rules 2-110(B) and (C). Appellant's attorney asserted that she must withdraw because Appellant's defense and position in the case were not supported by existing law or any good faith extension of existing law. Further, Appellant's defense and position in the case were merely for the purpose of harassing Mother. During a telephone conference on Appellant's counsel's motion, in which Appellant did not participate, Appellant's counsel told the magistrate and Mother's counsel that she had informed Appellant of her intent to withdraw at least a week prior to the scheduled January 23, 2003 hearing. Appellant's counsel also informed him of the hearing date. The trial court judge, not the magistrate, granted Appellant's counsel's motion to withdraw.
 {¶ 8} On January 23, 2003, a hearing was held on CSEA's motion to establish a parent/child relationship and requests for support, repayment and medical coverage. Present at the hearing were the magistrate, Appellant, Mother, Mother's counsel and counsel for CSEA. The magistrate denied Appellant's request for a continuance to obtain new counsel. The hearing proceeded and Mother, Mother's friend, a representative from Genescreen, the genetic testing facility, and Appellant testified.
 {¶ 9} On April 11, 2003, the magistrate issued a decision and found that a parent/child relationship existed between Appellant and Taylor. The magistrate ordered current child support, effective June 4, 2001 through January 1, 2002, of $1,206.03 per month, including processing fee, for the support of Taylor. Effective January 1, 2002, Appellant was ordered to pay $1,122 per month, including processing fee, for the support of Taylor. The magistrate granted Mother a judgment against Appellant for past child support and medical expenses in the amount of $112,952.48. In addition to his current child support obligation, Appellant was ordered to pay an additional $225 per month toward his arrears.
 {¶ 10} On April 16, 2003, the trial court adopted the Magistrate's Decision and made it an order of the court. On April 29, 2003, Appellant, through new counsel, filed objections to the Magistrate's Decision. Appellant then filed a brief in support of his objections and Mother filed a response to Appellant's objections. On October 23, 2003, Appellant filed a reply brief. On January 8, 2004, the trial court overruled Appellant's objections.[3] Appellant has timely appealed the trial court's decision, asserting eight assignments of error.
 II Assignment of Error Number One
"[Appellant] was denied his federal and Ohio constitutional due process right to the assistance of counsel by the granting of his former counsel's motion to withdraw on the day before trial and the subsequent denial of his request for a continuance of the trial in order to obtain new counsel."
 {¶ 11} In his first assignment of error, Appellant has argued that he was denied his constitutional right to the assistance of counsel when the trial court granted Appellant's counsel's motion to withdraw and when the trial court denied Appellant's request for a continuance to obtain new counsel. Specifically, citingState, ex rel. Cody v. Toner (1983), 8 Ohio St.3d 22, Appellant has asserted that a defendant to a paternity action has the right to the assistance of counsel because substantial pecuniary interests are involved and the representation of counsel is critical in paternity proceedings. We agree.
 {¶ 12} Toner involved an alleged father in a paternity action who sought review of a judgment which dismissed his action in mandamus to compel a trial judge to grant his motion for appointment of counsel. Id. The alleged father in Toner was indigent and his Legal Aid attorney withdrew when a conflict of interest was discovered.[4] The Toner Court was presented with the issue of whether the denial of court-appointed counsel for an indigent paternity defendant who faces the state as an adversary violates the due process guarantees of the Ohio and United States Constitution. Id. at 23. Basing its decision on its prior opinion in Anderson v. Jacobs (1981), 68 Ohio St.2d 67, which addressed the issue of the denial of blood tests to an alleged father who could not afford genetic testing and held that his constitutional rights were violated, the Toner court held that its appellant's constitutional rights were also violated.Toner, 8 Ohio St.3d at 24.
 {¶ 13} The Toner Court found that 1) the private interests implicated were substantial; 2) the "substantial interests and the integrity of the paternity determination itself could easily be damaged if appellant herein were to be denied counsel during the proceedings"; and 3) "the state's financial stake in providing appellant with court-appointed counsel during the paternity proceedings is hardly significant enough to overcome the private interests involved." Id. at 23-24. Toner
established that "the denial of court-appointed counsel for an indigent paternity defendant who faces the state as an adversary, when the complainant-mother and her child are recipients of public assistance, violates the due process guarantees of the Ohio and United States Constitutions." Id. at 24.
 {¶ 14} Mother has argued that Toner does not apply because Appellant "is not indigent nor is [Mother] on public assistance." Assuming arguendo, that Appellant "had a right to counsel," Mother has asserted that Appellant's due process rights were not violated because his lack of counsel was a result of his own acts and omissions. While this Court acknowledges the factual basis for Mother's assertions regarding Appellant's behavior and arguments that lead to his counsel withdrawing, we cannot agree with her limited reading of Toner.[5]
 {¶ 15} This Court has previously applied Toner to an indigent alleged father in a paternity action and we find that it is also applicable to this case. See Furman v. Waggoner (Jan. 29, 1997), 9th Dist. No. 17756. While Toner involved an indigent father and a mother on welfare, the holding of the case is not limited to the specific facts of the case. See Hunter v.Harrison (Mar. 30, 1995), 8th Dist. No. 67287 (finding that a defendant has a right to counsel when the state is a plaintiff in a paternity action.). We find that when the state is an adversary in a paternity action, a defendant is entitled to the assistance of counsel, regardless of whether the defendant is indigent or can afford counsel. As the court found in Toner, we find that substantial interests are involved in paternity actions and that those interests are at stake when a defendant is denied the assistance of counsel. This Court appreciates Mother's position on this issue and the impact this finding will have on her, but we believe Appellant's right to the assistance of counsel must take precedence.
 {¶ 16} Additionally, we do not believe the Ohio Supreme Court intended Toner to apply solely to indigent alleged fathers. This Court finds no basis in Toner awarding indigent alleged fathers greater rights than economically sound alleged fathers. Accordingly, we find that the right to the assistance of counsel for a defendant in a paternity action extends to all alleged fathers, not just indigent alleged fathers. It does not follow that all alleged fathers are entitled to appointed counsel; one must assert and prove their right to appointed counsel.
 {¶ 17} Further, a defendant in a paternity action is not required to have counsel; he may decide to proceed pro se. But if a defendant in a paternity action requests appointed counsel and is entitled to such counsel or requests a continuance to obtain private counsel, a trial court must allow the defendant the assistance of counsel.[6]
 {¶ 18} This Court also finds that the magistrate presenting Appellant with a choice of proceeding without an attorney or agreeing to a temporary support order in return for time to obtain counsel was unreasonable. Appellant had the unconditional right to the assistance of counsel and he was denied that right below. Further, we do not doubt that Appellant's former counsel informed him of her intent to withdraw, but Appellant was not involved in the telephone conference on his counsel's motion. This Court will not presume that a defendant knows, without being told by the trial court, that when his counsel withdraws and he desires new counsel that he must obtain counsel before the next hearing. While it is clear from the record that Appellant is aware of the workings of the civil legal system, the right to the assistance of counsel is a right afforded to all defendants in state assisted paternity actions, not just the defendants without knowledge of the civil legal system.
 {¶ 19} While this Court has reviewed the entire record and the parties' arguments on the remaining issues, due to the foregoing we make no ruling on said issues and are not finding that the end result of this matter would have been different if Appellant had counsel at the hearing. Rather we find that Appellant had the right to the assistance of counsel and was denied that right. Accordingly, we find that Appellant's first assignment of error has merit.
 Assignment of Error Number Two
"The magistrate and the trial court abused their discretion and denied the appellant due process of law by the arbitrary denial of the appellant's request for a continuance of the hearing so that he could obtain counsel to represent him."
 Assignment of Error Number Three
"The magistrate and the trial court abused their discretion in granting appellant's former counsel's motion to withdraw which was filed only two (2) days before the scheduled hearing, and granted by the magistrate on the day before the hearing."
 Assignment of Error Number Four
"The magistrate and the trial court denied the appellant due process in granting his former counsel's motion to withdraw without providing him prior notice of the hearing on the motion and an opportunity to present his objections to the motion."
 Assignment of Error Number Five
"The magistrate and the trial court erred and abused their discretion in finding that the appellant had sufficient time to obtain new counsel and to prepare his defense to the paternity complaint."
 Assignment of Error Number Six
"The trial court denied the appellant a meaningful opportunity to object to the magistrate's order/decision granting the motion to withdraw in violation of rule 53(C)(3)(b) and (e)(3)(A) of the Ohio Rules of Civil Procedure."
 Assignment of Error Number Seven
"The magistrate and trial court erred and abused their discretion in admitting genetic paternity test results and expert testimony thereon by Robert Gutendorf when such witness did not perform such tests, did not directly supervise such tests and did not sign off on the results of the tests, nor were the test results admitted independently of mr. gutendorf's testimony."
 Assignment of Error Number Eight
"The magistrate and the trial court erred and abused their discretion in ordering retroactive child support to the date of the minor child's birth when the mother wavied such right and/or was guilty of laches for her unreasonable and unexplained delay in contacting the child support enforcement agency (c.s.e.a.) in order to file a paternity complaint against the appellant."
 {¶ 20} In his remaining seven assignments of error, Appellant has alleged various procedural, evidentiary, and legal arguments. However, this Court need not address Appellant's remaining assignments of error because the arguments are rendered moot by our disposition of Appellant's first assignment of error. See App. R. 12(A)(1)(c).
 III {¶ 21} Appellant's first assignment of error is sustained. We decline to address Appellants remaining seven assignments of error. The judgment of the trial court is reversed, and the cause remanded for proceedings consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Batchelder, J., concurs.
[1] The record indicates that a hearing was never held on the motion and the trial court in the instant matter found the case still pending and merged it with the case currently before this Court.
[2] Although Appellant's legal residence was Texas, he maintained an apartment in northeast Ohio and his employer had a hub in Cleveland.
[3] The trial court sustained Appellant's objection that not all of the child support calculation worksheets were attached to the Magistrate's Decision. The trial court found that due to a clerical error some of the worksheets were not originally attached. The trial court corrected the error and attached the worksheets to its decision.
[4] Legal Aid had represented the mother involved in the case in a prior divorce action.
[5] The issue before this Court is whether Appellant had the right to the assistance of counsel, not whether his behavior or arguments in the case forfeited his right to counsel. Accordingly, our decision is purely procedural and does not condone or sanction his acts or omissions.
[6] We recognize that some alleged fathers, and possibly the present alleged father, may, in order to obtain continuances, attempt to take advantage of this decision by firing counsel or maintaining an attitude or behavior that forces counsel to withdraw. But a pattern of dismissed or withdrawing counsel and requests for continuances will not be tolerated. This holding should not be interpreted to allow an alleged father to obtain multiple continuances in order to frustrate the judicial process and harass the parties involved. The trial courts must maintain control of their dockets and properly warn defendants of any consequences they may face if their behavior results in numerous attorneys being fired or withdrawing as counsel. A trial court has the discretion to set a hearing date with "no continuances will be granted" language and if such an order is given the trial court must alert all parties and their counsel of the order.
Mother's appellate brief references an October 24, 2002 Magistrate's Order that set the final hearing date and stated that "[a]dditional time will be provided only if the parties request same prior to the hearing." This Court notes that said order was made when Appellant had counsel and the order was sent to his counsel, but not copied to Appellant himself. Thus this Court concludes that Appellant had no knowledge of the trial court's requirement that all continuance requests be made prior to the hearing. Accordingly, such an order does not change our position on the instant matter.