JOURNAL ENTRY AND OPINION
This is an appeal from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, which permanently terminated the parental rights of Jacqueline Williams ("Mother") and Herbert Bryant ("Father") and granted permanent custody of Teairra (dob 4/30/91), Tangina (dob 8/7/94) and Tamara Williams (dob 11/25/95) to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Appellant, Jacqueline Williams, mother of Teairra, Tangina and Tamara and appellant, Herbert Bryant, father of Tangina and Tamara, individually appeal this judgment and advance four assignments of error. We find no reversible error and affirm.
The record demonstrates the following facts giving rise to this appeal. In February, 1996, Teairra, Tangina and Tamara Williams were removed from Mother's care, were committed to the temporary custody of CCDCFS in April, 1996 and were placed in a foster home in July, 1996. Seventeen months later, on July 7, 1997, CCDCFS moved to modify temporary custody of the children to permanent custody claiming that the children cannot be returned to the parents because Mother failed to attend and successfully complete drug and alcohol abuse treatment and failed to obtain and maintain appropriate housing and Father lacks appropriate day care provisions. CCDCFS asserted that permanent placement would be in the best interest of these children because they are in need of legally secure placement. Hearings were initially scheduled to be held on December 23, 1997 and February 17, 1998, but were continued to provide additional time for Mother and Father to complete their case plan. The matter came before the juvenile court for hearing on April 28 and 30, 1998, twenty-six months after the temporary placement of the children.
At the hearing, the testimony of Kimberly Mitchell, the social worker, revealed that Mother had failed to comply with the terms of her case plan in that she failed to maintain a drug-free life style and failed to obtain stable and appropriate housing. Ms. Mitchell testified that Mother initially became involved with CCDCFS in January, 1992, due to her involvement with drugs and leaving her children unattended. In 1993, her oldest child was taken into legal custody and placed with her paternal grandmother. Then, on February 20, 1996, Mother was incarcerated and four of her children were removed from her care. Teairra, Tangina and Tamara were placed with an interested individual. The fourth child was placed in the legal custody of a paternal aunt. The children were removed from this original placement in July, 1996, after an unsubstantiated allegation of sexual abuse and they were placed together in a foster home.
In February, 1996 Mother was diagnosed as cocaine and alcohol dependent by AIRS and her case plan included drug treatment, parenting classes and stable housing. However, she failed to address her drug problem. Mother was involved in four drug programs and entered into treatment on five occasions but was discharged for non-attendance. In January 1997, Mother perpetrated a hoax in which she reported to the Cleveland police that she had been carjacked, kidnapped and placed in the trunk of her car for two days. After this incident she left town from January through May, and communicated with the social worker only by phone without revealing her location or communicating with the children. Upon her return to Cleveland, although her children had been in custody for eighteen months, she indicated that she was not ready to enter drug treatment. In September, 1997 she re-entered a drug treatment program at Hitchcock House where, although she completed both the in-patient and ten week after-care in December, 1997, she never maintained sobriety and she tested positive for cocaine on February 19, 1998, one month before delivering her newest baby.
Ms. Mitchell's testimony further indicated that during Mother's visitations with the children a tension existed between Mother and Teairra because the younger girls received a lot more attention. Ms. Mitchell opined that although the children know that appellant is their "Mother," the parental ties are not strong due to the length of time the children have been out of her care. Although Mother recently completed her parenting program she has failed to obtain stable housing, she has periodically lived on and off with Father and she currently lives across the street from him. Mother applied for transitional housing but was denied due to a perceived dishonesty during the interview indicating that she was not really invested in the program.
Ms. Mitchell also testified about her concerns relating to Father's failure to secure appropriate day care for the children, his demanding work schedule, the lack of time which he could spend with the children, and his acquiescence to Mother's involvement with the children when they are in his care, even though Mother has failed to address the issue of her substance abuse. Ms. Mitchell testified that Father was included in the case plan which required him to establish paternity, attend both a parenting program and AA meetings. It has been established that he is the father of Tangina and Tamara and is not the father of Teairra.
Ms. Mitchell testified that since July, 1997 the need for Father to secure appropriate day care has been at issue because his work schedule is from 5:30 a.m. until 6 p.m. six days a week. The lack of a day care provider has forced him to cancel scheduled overnight visitations with the children. She stated that currently, no day care provider is in place. Thus, although Father completed his case plan in November, 1997, the children are not able to be placed with him due to his failure to secure adequate day care.
Ms. Mitchell concluded that Mother is not in a position today or in the foreseeable future to have the children returned. When taken into custody, the children were four years old, one and one-half years old and three months old. Since that time the children have not lived with either parent. One other child has been removed from the Mother's care. Mother has failed to address her substance abuse issues and failed to secure adequate housing. Ms. Mitchell further opined that Father cannot take care of the children due to day care concerns, bonding issues, and the circumstances which indicate that Mother may provide the care of the children if Father gets custody, even though she still has substance abuse problems.
Next, Karen Catalano of the Ohio Youth Advocate Program testified that she is supervisor of children in foster care and foster parents and is assigned to Teairra, Tangina and Tamara. She did not have any concerns about either parents interaction with the children during visitations. Ms. Catalano testified that the children have a strong relationship with the foster family and she recommended a "permanency" because the children are strongly bonded together.
Mother testified and admitted to her continued drug use relapses, but said that she intends to enter a sixty-day treatment for drugs and alcohol at St Michael's Hospital. She denied having a problem with substance abuse. She said her relapse to cocaine use occurred on February 17th during her latest pregnancy after she was in court. Her newest child was delivered on March 22, 1998. She blamed her earlier relapse on being "tired" and wanting to "use".
Finally, she attended the program at Hitchcock House. She stated that she attended the majority of her visitations and her children were happy. Teairra, however, got "upset" during visitation so she let her sit to cool down. Mother admitted her participation during the Father's overnight visitation; she made breakfast both mornings and spent the entire Saturday with the children because they wanted her. She described her failure in the four drug treatment programs.
On cross-examination, Mother conceded that she has been involved with CCDCFS regarding these children since November 2, 1995 when Tamara tested positive at birth for cocaine. She admitted that she has had another child who was removed from her care. Although she signed a case plan which required drug treatment, she does not believe herself to be an alcoholic. She conceded that while the children were in custody she still used cocaine and alcohol off and on. Her drug relapse started on February 17, 1998 when she was under the impression that this case involved removal of her children permanently. She had used cocaine at least once since that time.
Finally, Father testified that he desired custody of his two girls and of Teairra. He stated that he owns his own four-bedroom home, is currently married, but lives alone and is employed as the manager of a warehouse for Parkwood Iron and Metal where he works from 5:30 a.m. to 5:30 p.m. six days a week. He indicated that he previously had the care of three step-children who are 12, 13, and 14 years of age, but they currently live with their mother, who takes care of them. He conceded that he was unable to keep these children due to difficulty with maintaining a babysitter due to behavioral problems. Therefore, he could not handle them anymore and he returned them to the care of their mother. He said the social worker advised him of the case plan which he signed in April, 1996. He completed the parenting program and attends AA meetings. He has contacted a babysitter who can take care of the children starting in June and has family to provide alternative care. Mother and the girls lived with him from time to time but he was unaware of Mother's drug use. He said that he maintained his visitations with the girls every week.
Father conceded that he was not sure he could handle the children because of his work schedule. However, he recently made arrangements with a day care provider able to provide care beginning in June. Father admitted that he was unable to have custody of the children before June because he currently did not have child care in place. Father conceded that Mother had stolen from him to support her drug habit.
A written report was submitted by the Guardian ad litem, Michael Granito, in which the GAL indicated that this matter had been before the court on three occasions since July 7, 1997 when the motion for permanent custody had been filed, but the matter had been continued to allow the parents to complete as much of the plan as possible. Mr. Granito's report concluded that "a careful examination of the events since the filing shows that both parents have failed over the past seven months to make progress." He noted that Mother has relapsed and even six months later the "Father has NOT obtained day care facilities for the children." (Emphasis in original.) Thus, the guardian ad litem in his report recommended that "* * * based on the above facts and circumstance, it is my opinion that the Motion for Permanent Custody of the children should be granted since it appears that reunification will not be obtained in the foreseeable future and that the children are in need of permanent, stable environment which can be obtained only through permanent custody." Although the GAL admitted his report to the court "as is," during closing argument, the GAL conceded that Father is willing to provide support for the children and because there was no testimony that the children could not be returned in the foreseeable future, he did not recommend permanent custody.
On May 19, 1998, the Juvenile court granted CCDCFS' motion for permanent custody. This consolidated appeal follows. Mother advances three assignments of error.
 I. THE COURT ERRED IN FINDING THAT THE CHILDREN COULD NOT OR SHOULD NOT BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME WHEN NO COMPETENT, CREDIBLE EVIDENCE SUPPORTED THE REASONS GIVEN FOR THAT FINDING.
 II. THE COURT ERRED AND COMMITTED REVERSIBLE ERROR IN FAILING TO CONSIDER THE FACTORS MANDATED BY R.C. 2151.414(D) WHEN DETERMINING EACH CHILD'S BEST INTEREST.
 III. BY DISSOLVING A FAMILY WHEN ADOPTION WAS NOT REQUIRED FOR ANY CHILD'S WELFARE, THE JUVENILE COURT VIOLATED JACQUELINE WILLIAMS' STATE AND FEDERAL DUE PROCESS GUARANTEES, DEPRIVED HER OF AN ESSENTIAL AND FUNDAMENTAL LIBERTY INTEREST, AND DEFEATED A GUIDING PURPOSE OF CHAPTER 2151 OF THE OHIO REVISED CODE.
Father advances a single assignment of error for our review.
 THE JUVENILE COURT ERRED AS A MATTER OF LAW IN GRANTING PERMANENT CUSTODY OF Teairra, TANGINA AND TAMARA WILLIAMS TO CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Initially, we note that appellant-Father, Herbert Bryant, is not the Father of Teairra Williams and, thus, the decision of the Juvenile court did not terminate his parental rights as to Teairra Williams. Accordingly, there is no judgment relating to the permanent custody of Teairra Williams from which Herbert Bryant may appeal. Accordingly, case no. 74751 is dismissed.
In Mother's first and Father's sole assignment of error each parent contends that the decision of the Juvenile Court to terminate Father's parental rights and grant permanent custody to CCDCFS is against the manifest weight of the evidence. Mother further contends that the termination of her parental rights is also against the weight of the evidence. Specifically, in these assigned errors each parent argues that the evidence fails to support the conclusion that these children cannot be placed with his parents within a "reasonable time." We do not agree.
When a public agency files a motion for permanent custody, R.C. 2151.414(A) directs the court to conduct a hearing. In order to terminate parental rights and grant permanent custody to the agency, R.C. 2151.414(B) requires that the juvenile court determine by clear and convincing evidence that permanent custody is in the best interests of the child. Clear and convincing evidence requires that the proof "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Cross v. Lediford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In this case, the court determined that: (1) the [children are] not abandoned or orphaned and the [children] cannot be placed with either of his parents within a reasonable time or should not be placed with his parents. R.C. 2151.414(B).
R.C. 2151.414(E) sets forth guidelines for determining whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents. The pertinent provisions of R.C. 2151.414(E) are as follows:
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the children parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
(10) The parent has abandoned the child.
* * *
 (16) Any other factor the court considers relevant.
R.C. 2151.141(E) requires the trial court to find that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with the parents once the court has determined by clear and convincing evidence that one or more of the factors exist. A reviewing court will not overturn a permanent custody order unless the trial court acted in a manner which is arbitrary, unreasonable or capricious. See In reLeevetta Gabriel (Feb. 26, 1998), Cuyahoga App. No. 72374 unreported.
In this case, the trial court found by clear and convincing evidence that the children cannot be placed with the parents by finding one or more of the factors enumerated in R.C.2151.414(E) existed. In its decision the court included its justifications, finding "Mother has failed to attend and successfully complete drug and alcohol abuse treatment parenting classes and she has failed to obtain and maintain appropriate housing for herself and her children. Father lacks appropriate day care provisions for his children and, as such, children can not be place [sic] in his care and custody."
Each justification given by the court falls within the statutory factors. The evidence in the record supports the trial court's conclusion that Mother has failed to remedy the conditions which caused these children to be placed outside the home; the chemical dependency of the Mother makes her unable to provide an adequate permanent home; by her actions, Mother has demonstrated a lack of commitment. Moreover, Father has demonstrated a lack of commitment in his failure to prepare a suitable child care plan for more than seven months since the CCDCFS' motion was filed and over two years since the children have been in custody. The evidence demonstrates that Father was unable to maintain child care for his other children as they got older due to difficulties with child care providers; Father still has a relationship with Mother and appears to remain dependent upon her for the care of the children despite her failure to maintain sobriety; Father seems unaware of her drug use and may be unable to protect the children. Thus, the record demonstrates that the court considered the relevant evidence which clearly and convincingly supported its conclusion that the children could not be placed with either parent within a reasonable time because even after twenty-six months, notwithstanding reasonable care planning and diligent efforts to assist these parents in remedying the problems, these parents have demonstrated a lack of commitment in their failure to correct the conditions which have prevented their parental custody. Therefore, the decision of the court cannot be said to be arbitrary, capricious or unreasonable. Accordingly, Mother's first assigned error and Father's sole assigned error are without merit.
In her second assigned error, Mother complains that the trial court failed to consider the required factors of R.C.2151.414(D). Specifically, Mother contends that it is in the best interest of the children to be placed with their Father.
Once the trial court finds from all relevant evidence that one of the factors enumerated in (E) exists, the court must then consider whether permanent commitment is in the best interest of the child. R.C. 2151.414(B). See In re William S. (1996), 75 Ohio St.3d 95,99.
R.C. 2151.414(D) provides the relevant factors which the court is required to consider and whether permanent commitment is in the best interest of the child and provides:
 In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) of section 2151.415
[2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353
[2151.35.3] or 2151.415 [2151.41.5] of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
The record demonstrates that although the children recognize appellant as their "Mother," at the time of the hearing these very young children had not lived with their Mother for twenty-six months. Visits with the Mother have been limited to minimal hours once a week due to the Mother's failure to become drug free. Although Father visited the children at the Metzenbaum Center, he was unable to have extended visits due to his work schedule. The children have a strong bond with each other and with the foster parent. The children have been out of the care of the parents for over two years because neither parent is in a position to care for them. Moreover, a legally secure placement will be able to be achieved with permanent custody.
Thus, the evidence presented supports the findings by the trial court that permanent custody is in the best interest of the children. Appellant-Mother's second assignment of error is without merit.
Finally, in her last assignment of error, Mother complains the termination of her parental rights violates her due process guarantees and causes a deprivation of her essential and fundamental liberty interest because termination of her parental rights was both premature and senseless.
An essential and basic right of any parent is to raise his or her children. Parents have a fundamental liberty interest in the care, custody and management of their child. In re Awkal (1994),95 Ohio App.3d 309, 315. A parent and child have substantial protected rights in their family relationship. State ex rel.Heller v. Miller (1980), 61 Ohio St.2d 6, 10. However, the rights and interests of the natural parents are not absolute. In reAwkal, supra at 315. The state may permanently terminate parental rights where the parents are unfit. State ex rel. Heller, supra
at 10. The parties must be afforded every procedural and substantive protection allowed by law because the termination of parental rights is the family law equivalent of the death penalty in a criminal case. In re Smith (1991), 77 Ohio App.3d 1, 16. However, "the clear and convincing evidence standard satisfies the requirements of due process in civil cases which involve government-initiate proceedings that threaten the individual involved with a `significant deprivation of liberty' or `stigma.'" Santosky v. Kramer (1982), 455 U.S. 745, 756.
Here, we have determined that the evidence clearly and convincingly demonstrates that these children had been in the temporary custody of the CCDCFS for twenty-six months without such improvement of conditions which would justify reunification with either parent because Mother has failed to maintain sobriety and secure appropriate housing for herself and the children and Father has failed to provide an adequate day care plan for the children for over two years. As such, the court found permanent placement to be necessary for the children's stability and in the best interests of these children. Thus, we find the requirements of due process to have been satisfied. Accordingly, appellant-Mother's third assignment of error is without merit.
Case No. 74751 is dismissed. Case Nos. 74787-88 and 74942-44 are affirmed.
It is ordered that appellee recover of appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
O'DONNELL, J. and SPELLACY, J., CONCUR.
 ___________________________________ TIMOTHY E. MCMONAGLE JUDGE