THE STATE, EX REL. HELLER ET AL., *v.*
MILLER, JUDGE, ET AL.

[Cite as State, ex rel. Heller, v. Miller (1980),
61 Ohio St. 2d  6.]

(No. 79-161—Decided January 2, 1980.)

Mr. *Robin M. Kennedy,* for relators.

Mr. *J. Stanley Needles,* prosecuting attorney, for respondents.

CELEBREZZE, C. J.   In order for a writ of mandamus to issue, this court must find that relator has a clear legal right to the relief prayed for, that respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law. *State, ex rel. Harris,* v. *Rhodes* (1978), 54 Ohio St. 2d 41, 42.

No plain and adequate remedy at law is available to relators in the case at bar. Relators cannot effectively appeal without a transcript and counsel. If relators continue their appeal *pro se,* without benefit of a transcript, any appeal will be ineffectively presented. As was stated in *State, ex rel. Tulley,* v. *Brown* (1972), 29 Ohio St. 2d 235, 237, the relator need not follow a suicidal course under the "ordinary course of the law" doctrine.

The rights of relators are based on their asserted indigency. The Court of Appeals refused to determine whether the relators were indigent. The trial court made its ruling on jurisdictional grounds, never reaching the issue of indigency. The stipulated facts clearly show that the Hellers are indigent. Both are unemployed and together they receive a total of $365 per month in social security benefits. They own no realty or substantial personal property, have basic monthly living expenses of $276, and are $250 in debt. If indigency

creates a duty on the part of a judge to order appointment of counsel and a transcript at public expense, then Earl and Karen Heller have a clear legal right to such relief.

The right to appointed counsel and a transcript can only exist under the constitutional guarantees of due process and equal protection of the law found in the Fourteenth Amendment to the United States Constitution, and in Sections 1, 2, 16 and 19 of Article I of the Ohio Constitution. We look to federal case law to delineate the right of relators under both the state and federal provisions. The Ohio Constitution's guarantees in these matters are substantially equivalent to the United States Constitution's guarantees. The phrase in Section 2 of Article I that "***[g]overnment is instituted for their [the people's] equal protection and benefit" is essentially identical to the Fourteenth Amendment's equal protection clause. *Kinney* v. *Kaiser Aluminum & Chemical Corp.* (1975), 41 Ohio St. 2d 120, 123. Section 16 of Article I guarantees that "***every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law***." When read in conjunction with Sections 1, 2 and 19, Section 16 is the equivalent to the Fourteenth Amendment's due process clause. *Direct Plumbing Supply Co.* v. *Dayton* (1941), 138 Ohio St. 540; *Akron* v. *Chapman* (1953), 160 Ohio St. 382. As a consequence, decisions of the United States Supreme Court can be utilized to give meaning to the guarantees of Article I of the Ohio Constitution.

The United States Supreme Court has recognized the existence of a fundamental, privacy-oriented right of personal choice in family matters under the due process clause. The development of this right began in *Meyer* v. *Nebraska* (1923), 262 U. S. 390, where the court, in defining the liberty guaranteed under the due process clause, at page 399, stated:

"While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration, and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish

a home and bring up children, to worship God according to the dictates of his own conscience, and generally, to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."

The *Meyer* definition of liberty has led to cases declaring unconstitutional a statute prohibiting the use of contraceptives (*Griswold* v. *Connecticut* [1965], 381 U. S. 479), and statutes making all abortions, except those to save the life of the mother, illegal (*Roe* v. *Wade* [1973], 410 U. S. 113). In *Roe* and *Griswold* the right to make decisions about the family was viewed as a fundamental right under the due process clause.

The fundamental right of personal choice in family matters has been expanded to include the right of family members to live together. In *Moore* v. *East Cleveland* (1977), 431 U. S. 494, a zoning ordinance which prevented a woman from living with her grandchild was ruled to be unconstitutional because it infringed on family matters. *Moore* was distinguished from *Village of Belle Terre* v. *Boraas* (1974), 416 U. S. 1, where the court upheld a zoning ordinance which severely limited housing arrangements entered into by unrelated people, but not housing arrangements between related people. The basis of the distinction was the family unit. The ordinance in *Moore* infringed on the family unit, but the ordinance in *Boraas* did not. As a consequence, the court in *Moore* did not give the deference usually accorded to zoning ordinances in finding the ordinance to be unconstitutional. The fundamental right which has emerged from *Meyer* clearly centers around the family and encompasses the right to maintain the family unit.

Within this fundamental right of personal choice in family matters is the right of a parent to his or her natural children. In *Stanley* v. *Illinois* (1972), 405 U. S. 645, a statute, which made an unwed father's children, upon the mother's death, wards of the state, without any showing of unfitness on the father's part, was held, at page 651, to be unconstitutionally defective because "[t]he private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the in-

terest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' *Kovacs* v. *Cooper,* 336 U. S. 77, 95 (1949) (Frankfurter, J., concurring)."

In *Smith* v. *Organization of Foster Families* (1977), 431 U. S. 816, the court went so far as to recognize some family rights for foster parents. It is clear from these cases that a parent and a child have substantial, protected rights in their family relationship under the due process clause.

Of course, where the parents are unfit the state may permanently terminate parental rights. The question before this court is whether the procedural safeguards of a transcript and counsel for an appeal as of right are required under the Ohio and United States Constitutions.

The United States Supreme Court has given rather significant procedural guarantees in criminal cases, including the right to counsel and a transcript at public expense for appeals as of right. The right to a transcript for indigents was established in *Griffin* v. *Illinois* (1956), 351 U. S. 12, where the court, at page 18, stated that although a right of appeal was not required by the due process clause, once a state gave that right in a criminal case it could not effectively deny it to indigents by requiring that they pay for a transcript they could not afford. The court held broadly that there could be no equal justice where the kind of trial received depended on the ability to pay. The same rationale was used in *Douglas* v. *California* (1963), 372 U. S. 353, when the court ruled that denial to indigents of counsel at public expense for an appeal of right was as invidious as denial of a transcript and violated the requirement of equality found in the Fourteenth Amendment.

In *Mayer* v. *Chicago* (1971), 404 U. S. 189, the right to a transcript for an appeal as of right, and by implication the right to appointed counsel, was granted to indigents convicted of crimes which were punishable by fines as opposed to jail sentences. The court held that a fine and the ramifications of conviction constituted a substantial enough loss to a defendant that ability to bear the cost of a transcript could not be

used to determine whether an appeal would be taken. Under *Mayer* then, the liberty one is deprived of need not be a jailing in order for a transcript and appointment of counsel to be required safeguards in an appeal as of right.

The Supreme Court recognized the existence of similar due process rights in civil cases in *Boddie* v. *Connecticut* (1971), 401 U. S. 371, where the court ruled that an indigent woman could not be denied access to a court to pursue a divorce because of court fees and the cost of service of process. In *United States* v. *Kras* (1973), 409 U. S. 434, and *Ortwein* v. *Schwab* (1973), 410 U. S. 656, the court ruled that in bankruptcy cases and welfare payment reduction cases a fee could be imposed on indigents. The court distinguished *Boddie,* stating that *Boddie* dealt with the fundamental rights connected with the marital relationship as opposed to the economic rights involved in *Kras* and *Ortwein,* and that in both bankruptcy and welfare cases a hearing was available which was sufficient protection for indigents in cases involving economic rights.

The analysis in these cases is not clearly stated. At the trial level, the rights arise in civil cases from the due process clause, and in criminal cases they arise from the Sixth Amendment's guarantee of counsel and the due process clause. However, the equal protection clause is used regarding appeals because there is no due process guarantee of appeal.

Under the equal protection clause, in the absence of state action impinging on a fundamental interest or involving a suspect class, a rational basis analysis is normally used. Where the traditional rational basis test is used great deference is paid to the state, the only requirement being to show that the differential treatment is rationally related to some legitimate state interest. In *Kras* and *Ortwein, supra,* cases involving economic rights, this analysis was used. The court held that the desire of the state to cover its expenses justified imposition of the fees.

In *Griffin* and *Douglas, supra,* though, a more stringent analysis was used. In *Griffin* the court stated, at page 17, that "[i]n criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or

color." This stringent equal protection analysis is triggered by the existence of a fundamental interest in equal treatment in appeals from judgments affecting one's liberty. This fundamental interest derives from the due process clause and its protection of liberty.

In *Griffin* the court states that the failure to provide indigents with an effective right of appeal violates both the due process and equal protection clauses, and in doing so recognizes the derivation of this fundamental right from the due process clause. In *Ross* v. *Moffit* (1974), 417 U. S. 600, Justice Rehnquist, speaking for a majority of the court, recognized this when he stated, at page 608, that in the *Griffin* and *Douglas* line of cases "some support***[was] derived from the Equal Protection Clause of the Fourteenth Amendment, and some from the Due Process Clause of the Amendment."

In *Mayer* v. *Chicago, supra,* the court derived from the due process clause a fundamental right to equality in appeals in cases involving convictions and consequent fines, extending *Griffin.*

The issue before us is whether there is also derived from the due process right of personal choice in family matters a fundamental right to equality in appeals in cases instituted by the state to permanently terminate parental rights.

Numerous courts have recognized a constitutionally guaranteed right to counsel at the trial level in cases involving involuntary termination of parental rights based on the right of personal choice in family matters as protected by the due process clause. *Cleaver* v. *Wilcox* (C. A. 9, 1974), 499 F. 2d 940; *Danforth* v. *State Dept. of Health & Welfare* (Me. 1973), 303 A. 2d 794; *Crist* v. *Division of Youth and Family Serv.* (1974), 128 N.J. Super. 402, 320 A. 2d 203; *Matter of Ella B.* (1972), 30 N.Y. 2d 352, 285 N.E. 2d 288; *State* v. *Jamison* (1968), 251 Ore. 114, 444 P. 2d 15. Two courts have held that the right to counsel at public expense extends to appeals. *Reist* v. *Bay County Circuit Judge* (1976), 396 Mich. 326, 241 N.W. 2d 55; *In re Luscier* (1974), 84 Wash. 2d 135, 524 P. 2d 906. In *Reist* a transcript was also granted. These cases all recognize the importance of allowing parents to assert familial rights.

We recognize the appropriateness of these decisions. As seen in *Moore, supra,* and *Stanley, supra,* the right of personal choice in family matters, including the right to live as a family unit, is a fundamental due process right. Cases involving the involuntary, permanent termination of parental rights are unique. In these cases, the parents are in the position of protecting this fundamental due process right for both themselves and the child. Failure to give indigent parents an effective right of appeal when other parents are given such a right impinges on both their own and the child's fundamental interests under the equal protection and due process clauses. As a consequence, the parents are entitled to a *Griffin*-type analysis.

In the absence of sufficient justification by the state, these parents must be provided with a transcript and appointed counsel or they will be unconstitutionally deprived of their right of appeal. Neither the exclusion of frivolous appeals nor the desire to settle the child's fate quickly can justify depriving the indigent parent of the right to appeal when appellate review, as of right, is available to other parents in cases involving the involuntary, permanent termination of parental rights. As a consequence, we find that the refusal of the trial court to supply a transcript and of the Court of Appeals to provide counsel constitute a trespass on the rights of similarly situated citizens, in violation of the due process and equal protection clauses of the United States and Ohio Constitutions.

It is not our intention to require that a full transcript be provided if it is not necessary for an effective appeal. Of course, where a full transcript is necessary it must be provided. We do not require the courts to aid all who claim to be indigent; a court can, in appropriate cases, find that the parents are not indigent. We also do not state that the law enabling the state to terminate parental rights is unconstitutional. Clearly the state has a strong interest in terminating parental rights when it is in the child's best interest.

We hold that in actions instituted by the state to force the permanent, involuntary termination of parental rights, the United States and Ohio Constitutions' guarantees of due process and equal protection of the law require that indigent

parents be provided with counsel and a transcript at public expense for appeals as of right.

It is the trial court's responsibility to prepare transcripts. App. R. 9 and 10. The fact that the case is before the Court of Appeals does not relieve the Court of Common Pleas of any duty it may have to prepare a transcript at public expense. The Court of Appeals is responsible for the appointment of counsel. The Court of Appeals herein held that there is no statutory authorization to appoint counsel on appeal in a civil matter. Constitutional requirements override any statutory void involved. In addition, R. C. Chapter 120 is used at the trial level under R. C. 2151.352 and can be used on appeal as well. Judge Davis of the Juvenile Division of the Court of Common Pleas is found to be under a clear legal duty to order that the Hellers be provided with a transcript of the proceedings in his court. Judges Miller and Guernsey of the Court of Appeals are found to be under a clear legal duty to appoint counsel for the Hellers at public expense.

Accordingly, the writ of mandamus is hereby allowed.

*Writ allowed.*

HERBERT, W. BROWN, SWEENEY and LOCHER, JJ., concur.

P. BROWN and HOLMES, JJ., dissent.

HOLMES, J., dissenting. Although I dissent from the majority opinion herein, for a number of basic reasons, I wish to state at the outset that my dissent is not by way of lack of sympathy for these natural parents who have lost their parental rights in this child. I do have deep feeling for them. But they have been afforded due process of law—and beyond. They had all the procedural hearings afforded to them by law, with the rulings made by a judge upon all necessary points of law and fact. Further, it must be pointed out that they were, pursuant to R. C. 2151.352, in fact represented by appointed counsel at the trial level, and we may assume, absent a specific showing to the contrary, that such representation was adequate.

There is no similar statute providing legal counsel for indigents in appeals from a determination of parental rights,

therefore there is no clear legal right for the issuance of a writ of mandamus based upon the Court of Appeals failing to follow a specific statute.

The next question to be answered is whether there is constitutional right to the appointment of legal counsel, and for the provision of a transcript of proceedings for purposes of appeal of a determination of parental rights.

The United States Supreme Court has clearly established that there exists a constitutional right for indigents to have trial counsel appointed for them in those criminal cases where they will be incarcerated if convicted. *Argersinger* v. *Hamlin* (1972), 407 U. S. 25. In addition, indigent defendants have the right to appointed counsel in appeals as of right, *Douglas* v. *California* (1963), 372 U. S. 353, and are entitled to a free transcript where necessary to effective review. *Griffin* v. *Illinois* (1956), 351 U. S. 12. These rights also inhere in collateral attack proceedings against criminal convictions. *Smith* v. *Bennett* (1961), 365 U. S. 708. However, all these rights belong only to indigents involved in criminal proceedings. It does not follow that they should automatically be granted in civil proceedings, regardless of the importance of the right at stake therein.

In this state the right to have appointed counsel for those who are indigent has not been extended to civil cases other than those involving involuntary commitment to mental institutions. *In re Fisher* (1974), 39 Ohio St. 2d 71.

I recognize that the right to raise one's children is a basic civil right of man, but that right has been tested within the protective framework of the trial proceeding here. The rights of the parents were not only protected by way of a lawful hearing before a judge, but also by way of an appointed trial counsel.

Where will the right to have appointed counsel and transcripts at state expense end? Indigent citizens may claim that many other activities or elements of their lives are based upon a constitutionally protected civil right, and seek appointed counsel in a legal proceeding, whether the nature of such proceeding be within the realm of contract negligence or property law.

The General Assembly has not provided for court-

appointed appellate counsel at public expense in any civil actions, even though, as in these types of proceedings, it has provided for appointed counsel at the trial level. The fact that counsel may not be appointed in appealing civil actions does not deny a right to counsel. Where, in fact, inequities may exist, by reason of economic or social condition, the government has provided for the availability of counsel in civil cases by a means distinct and separate from the requirements for appointment of counsel in criminal cases or those cases where an individual's liberty is in jeopardy.

Parenthetically, it should be pointed out that there are many organizations throughout the state, including the county from which this appeal emanated, providing a legal aid service. If indigents with a civil matter apply to such agencies, there is reasonable opportunity for legal representation.

In my view, it is not required to construe the Constitutions of the United States or the state of Ohio as mandating the provision of legal counsel for all those unable to so provide for themselves in all civil cases at the trial level and upon appeal. Nor should such construction be required in response to the request for a transcript of proceedings for purposes of appeal of a civil matter. Our society neither demands, nor desires, such a burden being placed upon it. Courts should not engraft such a burden upon it.

Again, there is no clear legal right for the issuance of this writ, and I would accordingly deny it.

P. BROWN, J., concurs in the foregoing dissenting opinion.