DECISION
Appellant, Crystal Ross, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting the motion of Franklin County Children Services ("FCCS") for permanent custody of appellant's minor son, A'uantae. Because the trial court properly granted permanent custody of A'uantae Ross to FCCS, we affirm.
A'uantae was born on August 17, 1999. Two days later, FCCS filed a complaint in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, asserting (1) FCCS had been notified appellant and A'uantae had a positive toxicology for cocaine, (2) appellant did not begin prenatal care until she was twenty-two weeks pregnant, and (3) throughout the pregnancy appellant had positive toxicology for cocaine. According to the complaint, appellant admitted to using crack cocaine for years and once a week during her pregnancy, but felt she did not need substance abuse treatment. Noting the hospital had reported appellant was inattentive to the child, FCCS requested an emergency care order for the health and safety of the child. On the same day, an emergency care order was entered granting FCCS temporary custody, with authority to place A'uantae in foster care. The Franklin County Public Defender was appointed A'uantae's guardian ad litem. The matter was scheduled for hearing the next day.
At the August 20, 1999 hearing, the magistrate concluded that A'uantae's placement with appellant was not in his best interest. The magistrate's order also directed appointment of counsel for appellant, and scheduled the matter for hearing on October 1, 1999. Pursuant to the magistrate's order, counsel was appointed to represent appellant on August 26, 1999.
Following a hearing on October 1, 1999, the magistrate issued a decision, filed October 7, 1999, finding A'uantae to be a dependent minor as defined in R.C. 2151.04(C). Concluding residence in appellant's home would be contrary to A'uantae's welfare, the magistrate's decision temporarily committed A'uantae to the custody of FCCS until further order of the court. The matter was set for annual review on August 18, 2000. By judgment entry filed the same day, the trial court adopted the magistrate's decision.
In the interval between the October 1, 1999 hearing and the annual review scheduled for August 18, 2000, two separate sets of documents reflecting the semi-annual administrative review ("SAR") were filed with the trial court. Both indicated appellant's failure to achieve any part of her plan for reunification, to provide a home for A'uantae, or to address her substance abuse problem. Indeed, the June 29, 2000 SAR indicated appellant had no desire to become compliant or involved in a treatment plan, and it recommended maintaining custody pending permanency proceedings.
On July 18, 2000, FCCS filed a motion for permanent custody pursuant to R.C. 2151.353(A)(4), seeking custody under R.C. 2151.353(B)(1)(a). Thereafter, the hearing on FCCS's motion was continued numerous times. In the interim, the November 29, 2000 SAR was filed. Once again it indicated no progress in appellant's efforts to visit with her child or to work toward reunification, including developing a means of support or a place to live, or attending treatment for substance abuse or parenting classes.
On April 24, 2001, the matter was heard before the trial court. At that time, counsel for appellant sought to withdraw, indicating she last saw appellant on September 13, 2000. She stated she "left phone calls" for appellant, and sent a certified letter, for which appellant signed, asking appellant to call her attorney and advising of the April 24, 2001 court date. (Tr. 4.) After the trial court ascertained that appellant was aware of the proceedings scheduled for April 24, 2001, it proceeded with the hearing. It, however, refused to allow counsel for appellant to withdraw, despite counsel's request premised on an absence of communication with appellant and a lack of knowledge of appellant's position with respect to the proceedings.
Following the hearing, the trial court issued a decision and judgment entry, including findings of fact and conclusions of law, that granted FCCS's motion for permanent custody. Appellant timely appeals, assigning the following errors:
 I. THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR PERMANENT CUSTODY AS THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 II. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
Because appellant's two assignments of error are interrelated, we address them jointly. Together they challenge the trial court's decision to grant FCCS permanent custody of A'uantae, and they contend the decision is not supported by the manifest weight of the evidence, and appellant was rendered ineffective assistance of counsel during the proceedings.
FCCS sought and obtained permanent custody of A'uantae pursuant to R.C. 2151.414(B), which states:
 (1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
In considering the trial court's decision to grant permanent custody to FCCS, this court must determine from the record whether the trial court had the requisite evidence to satisfy the clear and convincing standard. Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In the Matter of Coffman (Sept. 7, 2000), Franklin App. No. 99AP-1376, unreported, citing Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
FCCS originally sought permanent custody pursuant to R.C.2151.414(B)(1)(a), which requires that the child, neither abandoned nor orphaned, has not been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two month period. At the time FCCS filed its motion for permanent custody of A'uantae, A'uantae had not been in temporary custody for twelve or more months of a consecutive twenty-two month period. By virtue of the numerous continuances of the permanent custody hearing, however, A'uantae had been in the custody of FCCS for more than twelve months by the date of the hearing on FCCS's motion. Given that fact, the trial court granted FCCS's motion under R.C. 2151.414(B)(1)(d).
According to that statutory provision, the trial court could grant permanent custody if the court determined by clear and convincing evidence that (1) it is in the best interest of A'uantae and, (2) A'uantae has been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of the amendment to the statute. The record allows little dispute that the second prong of the statutory test has been met. Instead, appellant contends the record does not support the trial court's conclusion that it was in the best interest of A'uantae to grant FCCS permanent custody.
In determining best interest, R.C. 2151.414(D) requires the trial court to consider all relevant factors including, but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353 or 2151.415 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
Examination of the record under the factors set forth in R.C. 2151.414(D) reveals ample evidence to support the trial court's determination that A'uantae's best interest is served by placing him in the permanent custody of FCCS and thereby making him available for adoption.
R.C. 2151.414(D)(1) addresses the interaction and interrelationship of the child with his parents and other relatives. Here, the evidence was unequivocal that A'uantae had not bonded with appellant, but instead had developed a bond with the only mother he had known in his entire life, his foster mother. Appellant did not pursue visitation with A'uantae. Despite being given the opportunity to visit with him regularly, appellant frequently arrived late for visitation, and failed to visit with A'uantae at all after August 2000. The putative father failed to support, visit, or communicate with A'uantae at any point in the child's life; no paternity has been established. Appellant's limited involvement in A'uantae's life supports the trial court's conclusion that permanent custody to FCCS is appropriate under R.C. 2151.414(D)(1).
Some of the provisions of R.C. 2151.414(D)(2) do not apply, as A'uantae is unable to express his own wishes regarding the outcome of the motion for permanent custody. The guardian ad litem, however, recommended permanent placement with FCCS.
R.C. 2151.414(D)(3) was satisfied. A'uantae had been in the temporary custody of FCCS for twelve or more months of a consecutive twenty-two month period: from August 19, 1999 through the April 24, 2001 hearing. Similarly, R.C. 2151.414(D)(4) favors permanent custody, as A'uantae's foster family has indicated an interest in providing A'uantae a permanent home through adoption. None of the factors set forth in divisions (E)(7) to (11) of R.C. 2151.414 applies here.
Given the foregoing evidence, the trial court's decision is supported by clear and convincing evidence that the best interests of A'uantae were met in granting FCCS's motion for permanent custody. In challenging that decision, appellant suggests the trial court was additionally required to determine whether A'uantae could be placed with either parent within a reasonable time, or should not be placed with his parents at all. See R.C. 2151.414(B)(1)(a).
As noted, FCCS originally sought permanent custody pursuant to that section because of the length of time A'uantae had been in temporary custody at the time FCCS filed its motion. While the trial court decided the motion under R.C. 2151.414(B)(1)(d), the trial court nonetheless appears to have engaged in some analysis of whether A'uantae could be placed with either of his parents within a reasonable time period. Although such analysis was unnecessary under R.C. 2151.414(B)(1)(d), the trial court's conclusions are supported by the evidence. While some of that evidence has been noted in connection with the "best interests" analysis, for purposes of addressing appellant's contentions under R.C.2151.414(B)(1)(a), we note appellant has a significant substance abuse problem and used cocaine regularly during her pregnancy. As a result, A'uantae was born drug-exposed. In an effort to achieve reunification, the Ohio Youth Advocate Program ("OYAP") team, a contractor of FCCS, attempted to work with appellant on her drug and alcohol counseling, parenting skills, visitation, and bonding.
In addressing appellant's substance abuse, OYAP attempted on more than nine occasions to do an assessment of appellant, but appellant failed to comply despite transportation to take her to the point of assessment or the opportunity to have the assessment done in her home. OYAP was unable to persuade appellant to provide urine screens, and appellant made no attempt at ongoing treatment for drug or alcohol issues.
To enhance appellant's parenting skills, OYAP referred appellant to Health Resources Network. She failed to follow through on the services that were offered, and had not demonstrated any increase in parenting skills. Moreover, she failed to avail herself of the offered visitation of two hours per week. While she visited on a weekly basis for the first month, she thereafter stayed for only portions of the visits. In at least ten visits, appellant missed over an hour of the visit, leaving early or coming late. Appellant did appear for at least twenty-two visits. Since August 2000, she had not attended a scheduled visit. As a result, she failed to complete the visitation aspect of the case plan, as well as the portion of the plan relating to parenting skills.
Lastly, A'uantae has not bonded with appellant. If he sees his mother, he is afraid of her and does not want to be around her. Instead, he is bonded with his foster family, where he had been his entire life up to the point of the hearing, and that family had indicated a desire to adopt him. Given those factors, the representatives from OYAP believed adoption would positively benefit A'uantae.
Considering that evidence, along with the guardian ad litem's recommendation that FCCS be given permanent custody, the absence of evidence that A'uantae ever lived with either parent, and the absence of relatives willing to take A'uantae into their home, we agree with the trial court that A'uantae could not be placed in either parent's home within a reasonable time and that the best interests of the child lie in adoptive placement.
Appellant next suggests that the absence of favorable evidence results from the ineffective assistance of her counsel at the hearing. Specifically, appellant contends "trial counsel tried to withdraw from the case and stated she had a conflict with her client, failed to introduce supportive testimony, and repeatedly failed to object to inadmissible evidence. Her performance was so deficient as to constitute ineffective assistance. Because Appellant was prejudiced by counsel's ineffectiveness, a new trial is warranted." (Appellant's brief, 10.)
The trial court appointed trial counsel for appellant pursuant to Juv.R. 4 and R.C. 2151.352. See, also, State ex rel. Heller v. Miller (1980), 61 Ohio St.2d 6, paragraph two of the syllabus ("In actions instituted by the state to force the permanent, involuntary termination of parental rights, the United States and Ohio Constitutions' guarantees of due process and equal protection of the law require that indigent parents be provided with counsel and a transcript at public expense for appeals as of right").
Entitled to counsel, appellant was also entitled to the effective assistance of counsel. Jones v. Lucas Cty. Children Services Bd. (1988),46 Ohio App.3d 85; In re Heston (1998), 129 Ohio App.3d 825. To prevail on her claim of ineffective assistance of counsel, appellant must first show that counsel's performance was deficient. According to Strickland v. Washington (1984), 466 U.S. 668, 687, appellant must show "that counsel's errors were so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable." If appellant is able to demonstrate that counsel's performance was deficient, she must then show prejudice as a result of counsel's actions.
Here, as the hearing commenced, counsel for appellant attempted to withdraw from the case. On questioning from the trial court, counsel advised that she had had no contact with her client since September 13, 2000. Despite numerous phone calls and a certified letter advising appellant of the hearing date, she had received no response from appellant. As a result, she was unable to ascertain appellant's position with respect to the pending motion.
Appellant has failed to demonstrate counsel's performance at the hearing was deficient. While appellant contends counsel failed to introduce supportive testimony, appellant's own failure to remain in contact with her attorney deprived her attorney of any opportunity to develop supportive testimony. Moreover, although appellant charges counsel with deficient performance in failing to object to inadmissible evidence, counsel did not and could not know appellant's position on the pending motion due to appellant's failure to communicate with counsel. As a result, counsel was unable to ascertain what evidence was adverse to appellant's position on the motion, leaving counsel with no ability to determine what evidence warranted objection. In the final analysis, counsel's performance cannot be deemed deficient, as counsel was left in the unenviable position of being unable to determine what posture to take in representing appellant due to appellant's own failure to converse or correspond with counsel.
Given the foregoing, we overrule appellant's two assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
McCORMAC and LAZARUS, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.