OPINION
Maribeth and George Hayes, the natural parents of Amber and Curtis Hayes, appeal a judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, which terminated their parental rights and granted permanent custody of both children to the Tuscarawas County Department of Human Services. The two cases are consolidated here for the purposes of this opinion, because the issues in both cases are identical.
Appellants assign three errors to the trial court:
ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR I
 THE TRIAL [SIC] ERRED IN FAILING TO OBTAIN A KNOWING, VOLUNTARY AND INTELLIGENT WAIVER OF APPELLANT'S RIGHT TO COUNSEL AND BY PROCEEDING WITHOUT ALLOWING THE APPELLANTS TO RETAIN COUNSEL.
ASSIGNMENT OF ERROR II
 THE TRIAL COURT'S DECISION TO LOCK THE COURT ROOM DURING THE PERMANENT CUSTODY HEARING WAS AN ABUSE OF DISCRETION.
ASSIGNMENT OF ERROR III
 THE TRIAL COURT'S DECISION TO AWARD THE STATE PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The record indicates Curtis was born on February 16, 1986, and Amber was born on November 16, 1987. DHS began its involvement with the family in October of 1986. It appears the reason DHS became involved with the family was because of fighting and disputes between the appellants, which DHS deemed harmful to the children.
In July of 1998, the court placed Curtis in a facility known as Rogers Honor Farm. In September of 1998, the court placed Amber with relatives. On January 13, 2001, the court placed Amber in the temporary custody of DHS.
DHS created a case plan for appellants to follow in order to regain custody of their children. The case plan addressed five problems perceived in the home: marital discord, the parents' intellectual, physical and psychological impairment, the safety of the home, Curtis' delinquency, and appellants' economic resources. DHS presented evidence appellants made little or no progress under the case plan, and some of the problems escalated. DHS presented evidence appellants refused to cooperate with the case worker assigned to assist them in completing the case plan, and even subjected him to threatening behavior. DHS presented evidence appellants harassed the persons caring for the children.
The record indicates appellants failed to complete any aspect of the case plan, by refusing to obtain assessments or to follow counseling recommendations. The parents did not maintain employment or repair their home to address the safety issues. To the contrary, appellants indicated they were not going to comply with case plan, and refused to communicate with DHS. Geoffrey Geers, the social worker from DHS assigned to appellants' case, testified after about four months of working with appellants, appellants told him they would not longer permit him to come to their home, to telephone them, or send letters to them. He testified the same problems that had existed back in 1986 continued through the time of the hearing.
DHS presented the evidence of Dr. Gabriel El Hage Boutras, from the community health center in Dover. Dr. El Hage testified appellant George Hayes did not complete the psychological evaluation, partially because of appellant Maribeth Hayes' intervention. Dr. El Hage was able to complete a psychological evaluation of appellant Maribeth Hayes. Dr. El Hage testified there was not much he would be able to do to help the appellants, and the issues in the marriage would "linger on" because of the parties' personalities and IQ.
DHS also called Cindy Britzman, a nurse counselor from Harbor House in New Philadelphia. Britzman testified although appellant Maribeth Hayes called to set up an appointment for an assessment for herself and her husband at Harbor House, Britzman was never able to do the assessment for them. Britzman testified Harbor House is a domestic violence shelter for females only, and inasmuch as appellant Maribeth Hayes insisted her husband be part of any assessment, Harbor House could not do this for them. Britzman testified she referred the appellants to other agencies, including Professional Family Counseling, Community Mental Health, Alcohol Addiction, and the Chrysalis Center.
 I
In their first assignment of error, appellants argue the trial court abused its discretion by permitting appellants' counsel to withdraw, and proceeding without appointing the appellants new counsel. Appellants argue the trial court did not obtain a knowing, voluntary and intelligent waiver of the right to counsel before proceeding.
The record indicates that prior to the beginning of the hearing on the motion for permanent custody, appellants' appointed counsel requested leave to withdraw. Appellants had not appeared at the hearing at that time. Counsel represented to the court he had attempted to contact appellants, but they had not contacted him or cooperated in any regard. The court permitted counsel to withdraw.
The State proceeded to call its first witness. As the witness was concluding his testimony, appellants appeared. The court inquired why appellants were late for the hearing, and appellant Maribeth Hayes responded that the appellants don't get up until late, but they had hurried to attend court. The court then informed appellants it had permitted counsel to withdraw because appellants had made no contact with him whatsoever. Appellants agreed with this statement, and indicated they did not object to counsel withdrawing.
The court also indicated it had appointed a total of five attorneys for appellants, and appellants had asked for each of them to be discharged except for the last. The court informed appellants it would not continue the matter and did not believe there was any merit in appointing another attorney because appellants had failed to make use of any of the previous five. Appellants explained to the court their attorneys were nasty and wanted to lie, and they believed they did not need people like that involved with their case.
The court advised appellants no one could force them to have an attorney, but appellants requested one be appointed nonetheless. The court overruled the request for an attorney, and indicated the court would be proceeding on that day. Appellants responded "that's fine."
The record indicates appellants did not participate in the hearing, other than to make a final statement to the court, in which they re-asserted their belief DHS had made it impossible for them to complete the case plan and regain custody of their children. They also indicated the children's grandparents had been critical of the appellants.
Appellants correctly argue the Supreme Court has found a parent whose child is the subject of a custody proceeding involving the termination of parental rights has a right to be represented by counsel, Heller v.Miller (1980), 61 Ohio St.2d 6. See also Juv. R. 4. Appellants also correctly point out they did not agree to proceed without counsel, and the court did not conduct an inquiry pursuant to Juv. R. 29. Appellants argue the court never appointed a guardian ad litem to represent the appellants' interests.
DHS responds the record demonstrates the court had attempted to provide appellant with counsel, going to the extent of appointing five different lawyers to represent appellants. The record indicates appellants did not cooperate with any of the attorneys, in the same way that they had failed to cooperate with the case worker assigned to assist them in completing the case plan. Appellants indicated they were dissatisfied with all the legal representation they had received, and would not call an attorney because they believed it would be of no benefit to them.
The termination of parental rights is an extremely serious situation, and courts frequently allude to it as the death penalty of the juvenile court system. The trial court must take all reasonable steps to accord participants with legal representation, and to assure itself that if the parties refuse representation, they do so in a knowing, voluntary, and intelligent manner. In this case, however, the trial court correctly concluded there was no good cause to delay the hearing further, because based upon past experience, the appointment of new counsel would have been futile.
The first assignment of error is overruled.
 II
In their second assignment of error, appellants argue the trial court abused its discretion in locking the courtroom door during the proceedings. Appellants correctly cite the case of In Re: T. R. (1990),52 Ohio St.3d 6, which held a court may restrict public access to custody hearings if there exists a reasonable and substantial basis for believing public access could harm the child or endanger the fairness of the adjudication. The court must weigh the potential for harm versus the benefit of public access.
Appellants argue the trial court failed to hold a hearing or make any of the findings required by In Re: T.R. The record indicates, however, no one objected to the court's proceeding as it did.
Appellants argue if the court's instructions had been made a little earlier, appellants would have been barred from the courtroom. However, as DHS points out, it is clear appellants were present in the courtroom, because they discussed the case at length with the trial court on the record. There is nothing in the record to indicate anyone was actually excluded from the hearing.
We find the record does not demonstrate any error herein.
The second assignment of error is overruled.
 III
In their third assignment of error, appellants argue the court's decision was against the manifest weight of the evidence.
R.C. 2151.414 provides the trial court may award permanent custody to DHS if it finds by clear and convincing evidence the children cannot be placed with the parents within a reasonable time, or should not be placed with them. The statute outlines various factors which the trial court should consider in making this determination. The trial court cited two factors, the first being that notwithstanding reasonable case planning and diligent efforts by DHS, the parents failed continuously and repeatedly for a period of six months to substantially remedy the problems that initially caused the children to be placed outside the home. The second factor the trial court cited was that the parents have demonstrated a lack of commitment towards their children and have failed to provide an adequate home for the children at this time, and cannot do so within a period of one year.
The trial court made findings of fact to support this decision. The court found there had been a long history of court involvement with the family. The court found the placement with relatives had not been successful because of appellants' belligerent behavior. Appellants note only Amber was ever placed with relatives. Finally, the court found DHS had offered supportive services for each element of the case plan. Appellants argue the record does not support these findings.
Judgments supported by competent and credible evidence going to each essential element of the case may not be reversed as against the manifest weight of the evidence, C.E. Morris Company v. Foley ConstructionCompany (1978), 54 Ohio St.2d 279.
We have reviewed the evidence presented, and we find there is sufficient competent and credible evidence from which the court could conclude by clear and convincing evidence the children could not be placed with the parents within a reasonable time, because despite reasonable case planning and diligent efforts by DHS, the parents had failed to remedy their problems. The record also supports the trial court's determination that appellants had demonstrated a lack of commitment towards their children, and that it was in the best interest of the children to award DHS permanent custody.
The third assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed.
By GWIN, J., and WISE, J., concur HOFFMAN, P.J., concurs in part; dissents in part
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed. Costs to appellants.