[Cite as *In re A.P.*, 2014-Ohio-5244.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| | | No. 14AP-23 |
| A.P., | : | (C.P.C. No. 12JU11-15205) |
| [P.R., | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on November 25, 2014

*Sharon Carney-Packard*, Guardian ad Litem for A.P.

*Varner Law Office*, and *Carrie M. Varner*, for appellant.

*Jennifer M. Riley*, for appellee Franklin County Children Services.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

KLATT, J.

{¶ 1} Appellant, P.R., appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that awarded legal custody of P.R.'s son, A.P., to A.P.'s maternal grandmother, P.F. For the following reasons, we affirm.

{¶ 2} P.R. is the mother of A.P., who was born on December 27, 2007. A.P. is severely autistic. In March 2012, Franklin County Children Services ("FCCS") removed A.P. from his P.R.'s care due to her poor mental health. P.R. had been charged with child endangerment after hitting her daughter, but the Franklin County Municipal Court ruled that she was not competent to stand trial and committed her to a psychiatric hospital.

Based on these circumstances, the trial court found that A.P. was a dependent child, and it granted temporary custody of A.P. to FCCS.

{¶ 3} On February 6, 2013, FCCS moved for a court order terminating its temporary custody and granting legal custody of A.P. to P.F. P.R. opposed that motion. The matter proceeded to a trial before a magistrate. In her decision, the magistrate found that P.F., who had been caring for A.P. while he was in FCCS' temporary custody, had done an excellent job providing for A.P.'s extensive and complicated needs. P.R., on the other hand, had failed to offer any evidence that she could handle raising A.P., particularly given that P.R.'s mental health issues, which include paranoia, put her at odds with those who would help her. The magistrate concluded that it was in A.P.'s best interest to remain in P.F.'s care, and thus, she recommended that the trial court grant FCCS' motion.

{¶ 4} In an interim order dated October 7, 2013, the trial court adopted the magistrate's decision. P.R. then objected to the magistrate's decision. Both of P.R.'s objections challenged findings of fact in the magistrate's decision.

{¶ 5} In addition to filing objections, P.R. moved for an order directing that the trial transcript be prepared at public expense due to her indigency. P.R. supplemented her motion with an affidavit of indigency, in which she stated that her monthly income was $2,482.58.

{¶ 6} The trial court denied P.R.'s motion for a transcript at public expense. The trial court granted P.R. a continuance to obtain the transcript, but P.R. failed to file one. In a judgment dated January 9, 2014, the trial court dismissed P.R.'s objections, ruling that, due to the lack of a transcript, it had to presume that the magistrate correctly interpreted the facts.

{¶ 7} P.R. now appeals from the January 9, 2014 judgment, and she assigns the following error:

> THE LOWER COURT COMMITTED ERROR WHEN THE TRIAL JUDGE DENIED APPELLANT, AN INDIGENT MOTHER, THE RIGHT TO A TRANSCRIPT AT STATE EXPENSE[.]

{¶ 8}   By her sole assignment of error, P.R. argues that, due to her indigency, she has a constitutional right to a transcript at public expense.[1]  We disagree.

{¶ 9}   The issue before this court is whether the United States Constitution and/or Ohio Constitution require the state to pay for and provide a transcript to an indigent parent when, in an action instituted by the state, a magistrate recommends granting legal custody of a child to someone other than a parent.  Unfortunately, no federal or Ohio court has addressed this precise issue.  However, both federal and Ohio courts have addressed an indigent parent's right to a transcript, as well as appointed counsel, in the context of permanent termination of parental rights.  Therefore, we turn to that precedent for illumination.

{¶ 10}   In *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6 (1980), the Supreme Court of Ohio examined whether an indigent parent had a right to appointed counsel and a transcript at public expense in an appeal of an order terminating parental rights.  The court stated that such a right could only exist under the constitutional guarantees of due process and equal protection of law found in the Fourteenth Amendment to the United States Constitution, and in Article I, Sections 1, 2, 16, and 19 of the Ohio Constitution.  *Id.* at 8.  After reviewing precedent elucidating these constitutional provisions, the court concluded that:

> the right of personal choice in family matters, including the right to live as a family unit, is a fundamental due process right. Cases involving the involuntary, permanent termination of parental rights are unique.  In these cases, the parents are in the position of protecting this fundamental due process right for both themselves and the child.  Failure to give indigent parents an effective right of appeal when other parents are given such a right impinges on both their own and the child's fundamental interests under the equal protection and due process clauses.

*Id.* at 13.  Thus, the Supreme Court of Ohio held that, "[i]n actions instituted by the state to force the permanent, involuntary termination of parental rights, the United States and Ohio Constitutions' guarantees of due process and equal protection of the law require that

---

[1]   For purposes of the following discussion, we will presume that P.R. is indigent.

indigent parents be provided with counsel and a transcript at public expense for appeals as of right." *Id.* at paragraph two of the syllabus.

{¶ 11} Approximately one year after the Supreme Court of Ohio issued *Heller*, the United States Supreme Court decided *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18 (1981). In *Lassiter*, the Supreme Court considered whether the Due Process Clause of the Fourteenth Amendment entitled an indigent parent to the assistance of counsel in parental status termination proceedings. The court reviewed its precedent regarding the right to appointed counsel. From that precedent, the court drew the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. *Id.* at 26-27. The court then applied the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to the situation where a parent's rights are terminated and considered whether the net weight of those factors rebutted the presumption that there is no right to appointed counsel in the absence of a potential deprivation of physical liberty. In the end, the court concluded that no definitive answer existed. The court held that whether due process required the appointment of counsel to indigent parents depended on the exigencies of each particular case. *Lassiter* at 31-32.

{¶ 12} The Supreme Court of Ohio discussed *Lassiter* in a 1984 case that addressed whether an indigent parent had a constitutional right to counsel at all meaningful stages of parental neglect proceedings. *In re Miller*, 12 Ohio St.3d 40 (1984). The court recognized that, in light of *Lassiter*, it had overstated the scope of the protections of the United States Constitution in *Heller*. Turning to the question at bar, the court held that "[t]here is no constitutional requirement that appellant be afforded counsel at temporary custody proceedings." *Miller* at 41; *accord In re Moore*, 9th Dist. No. 19217 (Dec. 15, 1999) (holding no constitutional error occurred where the trial court failed to appoint counsel to a mother before granting legal custody of the children to their grandmother); *In re Hitchcock*, 120 Ohio App.3d 88, 101 (8th Dist.1996) (stating that constitutional protections "are given only where an award of permanent custody is being considered because, under permanent custody, all of the parent's rights to his or her child are terminated").

{¶ 13} The next case relevant to our analysis is *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996). There, the United States Supreme Court considered whether a state could

condition appeals from trial court decrees terminating parental rights on the affected parent's ability to pay record preparation fees. The fee at issue arose from a state statute and procedural rule, both of which mandated that the appellant pay the cost of a transcript if the appellant intended to challenge a finding or conclusion as unsupported by or contrary to the evidence.

{¶ 14} After reviewing its decisions concerning access to judicial processes, the Supreme Court concluded that, in such cases, due process and equal protection principles converge. "The equal protection concern relates to the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs," while "[t]he due process concern hones in on the essential fairness of the state-ordered proceedings anterior to adverse state action." *Id.* at 120.

{¶ 15} To determine the constitutionality of a restriction on access to judicial processes, a court must "inspect the character and intensity of the individual interest at stake, on the one hand, and the State's justification for its exaction, on the other." *Id.* at 120-21. Ordinarily, courts only examine fee requirements for rationality. *Id.* at 123. In such ordinary cases, "[t]he State's need for revenue to offset costs * * * satisfies the rationality requirement." *Id.* However, in three categories of cases, fee requirements must fall. One of those categories consists of cases in which a court forever terminates parental rights. *Id.* at 124.

{¶ 16} As a final matter, the Supreme Court emphasized that striking down fees in parental termination cases would not "open floodgates" to the abolishment of fees in all domestic relations matters. The court stated:

> [W]e have repeatedly noticed what sets parental status termination decrees apart from mine run civil actions, even from other domestic relations matters such as divorce, paternity, and child custody. * * * To recapitulate, termination decrees "wor[k] a unique kind of deprivation." *Lassiter*, 452 U.S., at 27, 101 S.Ct., at 2160. In contrast to matters modifiable at the parties' will or based on changed circumstances, termination adjudications involve the awesome authority of the State "to destroy permanently all legal recognition of the parental relationship." *Rivera* [*v. Minnich*], 483 U.S. [574], 580 [(1984)].

*Id.* at 127-28.

{¶ 17} In the precedent we have set forth above, the determinative factor is the permanent termination of the parent-child relationship. The total, irreversible elimination of parental rights triggers constitutional protection and entitles an indigent parent to waiver of fees and/or assistance of appointed counsel. Any lesser court action— such as the denial of temporary custody over the child—does not.

{¶ 18} The case at bar does not involve the termination of parental rights. Here, the trial court granted *legal* custody to P.F. Unlike a grant of permanent custody, the grant of legal custody does not terminate the parent-child relationship. A parent who loses legal custody of a child retains certain residual parental rights, privileges, and responsibilities, as well as the right to request return of legal custody in the future. R.C. 2151.011(B)(21); R.C. 2151.353(F)(2); *In re L.D.*, 10th Dist. No. 12AP-985, 2013-Ohio-3214, ¶ 7; *In re D.H.*, 10th Dist. No. 11AP-761, 2012-Ohio-2272, ¶ 8.

{¶ 19} Because this case does not involve the termination of parental rights, we must apply the rational-basis test to determine whether the United States and Ohio Constitutions require the provision of a transcript to P.R. due to her indigency. *M.L.B.* at 123. The state's need to protect the public coffers justifies its refusal to supply transcripts of dispositional proceedings to indigent parents where legal custody is at issue. *See id.* Accordingly, the trial court did not deprive P.R. of any constitutional right when it denied her request for a transcript at public expense.

{¶ 20} For the foregoing reasons, we overrule P.R.'s sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

CONNOR and LUPER SCHUSTER, JJ., concur.