[Cite as *In re C.W.*, 2016-Ohio-3235.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: C.W. | : | **O P I N I O N** |
| | : | **CASE NO. 2015-A-0062** |

Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division, Case No. 2013 JC 00096.

Judgment: Affirmed.

*Margaret L. Brunarski*, 302 South Broadway, Geneva, OH 44041 (For Appellant, Christopher Withrow).

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, *Shelley M. Pratt*, Assistant Prosecutor, and *Susan Thomas*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Appellee, Ashtabula County Children Services).

*Anita B. Staley*, Barthol & Staley, L.P.A., 7327 Center Street, Mentor, OH 44060 (Guardian ad litem).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Christopher Withrow, appeals the trial court's order terminating his parental rights due to the failure to appoint counsel. We affirm.

{¶2} Appellant and Kelly Estep are C.W.'s biological parents. C.W., a girl, was born with a serious birth defect preventing the hemispheres of her brain from

communicating. As a result, she is blind and, until recently, it was believed that C.W. would never be able to walk or communicate verbally.

{¶3} Appellant has not seen C.W. since September 2011, when he was convicted in the Ashtabula County Court of Common Pleas of aggravated murder, murder, and aggravated robbery. He was ordered to serve a life sentence with the possibility of parole after thirty years. The conviction and sentence were affirmed. *State v. Withrow*, 11th Dist Ashtabula No. 2011-A-0067, 2012-Ohio-4887.

{¶4} Kelly Estep had custody of C.W. until November 2013, when she was removed from Estep's residence due to malnutrition and neglect. The Ashtabula County Children Services Board was given temporary custody, and C.W. was placed in a foster home. Over the next six months, three hearings were held, and a case plan was created to assist Estep in regaining custody. When Estep was unable to make progress on the case plan, the board moved for permanent custody.

{¶5} The board's custody complaint was served upon appellant via certified mail. Thereafter, every order issued, except the judgment relating to Estep's case plan, was sent to appellant via ordinary mail. Like the custody complaint, the board's motion for permanent custody was served upon appellant by certified mail. The second page of that motion states:

{¶6} "You will take notice that a motion has been filed in the Juvenile Court [by] Ashtabula County Children Services Board, requesting an order that C.W. be committed to the Permanent Custody of ASHTABULA COUNTY CHILDREN SERVICES BOARD. You are hereby notified that if the motion for Permanent Custody is granted, you will lose forever all parental rights and privileges with respect to said child including the right

2

to decide where the child will live, what religion the child will receive, what the child's name shall be and whether the child will be adopted. Also, all duties, including the obligation to support, provide, and care for the child will forever end.

{¶7} "You have the right to be represented by a lawyer at all stages of the proceedings, or the right to a lawyer may be waived. If you wish to be represented by a lawyer, but are financially unable to hire one, you have a right to have a lawyer provided for you. Contact Court Administrator at (440) 994-6000, Monday through Friday, between the hours of 8:00 A.M. and 4:30 P.M., who is an employee designated by the Court to arrange for the prompt appointment of counsel for indigent persons. You also have the right to offer evidence, to cross examine witnesses, and to have a record of all proceedings made, at public expense, if indigent. You may bring witnesses with you or the Court will subpoena witnesses for you."

{¶8} The evidentiary hearing on the motion for permanent custody was held on May 14, 2015. As of then, appellant remained uninvolved in the proceedings and did not request counsel prior to the hearing's conclusion.

{¶9} At the outset of the hearing, the trial court approved Estep's motion to permanently surrender her parental rights. In regard to appellant, the board presented two exhibits establishing that he would be incarcerated until at least 2041. Additionally, a county family caseworker testified that C.W.'s health had improved dramatically while living with her foster family. The caseworker further testified that appellant had sent letters to C.W., the "Agency," and the foster family, and that a letter to the foster family showed that he knew the board was seeking to terminate his parental rights.

{¶10} On the same day as the hearing, the trial court rendered a final judgment

3

terminating Estep's parental rights over C.W. As to appellant, though, the court did not issue a final judgment until October 2015. Approximately one month before the trial court ruled and four months after the permanent custody hearing, the trial court clerk received a letter from appellant, requesting that a lawyer be appointed to represent him.

{¶11} The October 2015 judgment made no reference to appellant's letter or the request for counsel. The trial court found that C.W. could not be placed with appellant within a reasonable time as appellant's incarceration would last for far more than eighteen months. The court further found that it would be in C.W's best interest to remain with the foster family and the court terminated appellant's parental rights.

{¶12} On appeal, appellant raises one assignment of error:

{¶13} "Father-Appellant was denied substantive and procedural rights where the trial court failed to appoint counsel on behalf of Father-Appellant."

{¶14} Appellant contends that proceeding with *the permanent custody hearing* without appointing him an attorney violates the right to due process. Appellant does not argue that the court erred in not appointing counsel upon request after the hearing was completed but before judgment.

{¶15} Ohio law expressly recognizes a statutory right to counsel in termination of parental rights cases and requires appointed counsel for indigent parents. R.C. 2151.352. The right also has a constitutional dimension. "In actions instituted by the state to force permanent, involuntary termination of parental rights, the United States and Ohio Constitutions' guarantees of due process and equal protection of the law require that indigent parents be provided with counsel and a transcript at public expense for appeals as of right." *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6, 399 N.E.2d 66

4

(1980), second paragraph of the syllabus.

{¶16} A parent's right to counsel in a "termination" action, however, is not absolute. *In re G.S.*, 10th Dist. Franklin Nos. 10AP-734, 10AP-736, 10AP-737, and 10AP-738, 2011-Ohio-2487, ¶7. Although due process concerns require the appointment of counsel in a given case, the parent's right is not the same as a criminal defendant's right to counsel under the Sixth Amendment.

{¶17} In *Lassiter v. Dept. of Social Services of Durham Cty.*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), the parent was serving a prison term of 25 to 40 years for murder when the county department of social services moved to terminate her parental rights. The parent was allowed to attend the final hearing, and an issue was raised concerning whether she should be afforded more time to obtain legal representation. The trial court refused to grant her additional time, and a North Carolina appellate court upheld the determination on the grounds that there is no constitutional mandate for the appointment of counsel in a parental termination action. After the state supreme court chose not to review the case, the United States Supreme Court granted certiorari.

{¶18} At the outset of its discussion, the *Lassiter* Court concluded that since a constitutional right to appointed counsel only arises when a litigant's personal freedom is at stake, the federal constitution does not require the appointment of counsel for an indigent parent in each termination case. *Id.* at 31-32. Nevertheless, the Court held that there are situations in which the appointment of counsel is a constitutional necessity. In summarizing *Lassiter*, the *In re G.S.* court noted:

{¶19} "*Lassiter* instructs that the appointment of counsel to an indigent parent in

5

a parental termination proceeding is not *always* required under the constitution, but, instead, the determination of whether due process requires the appointment of counsel in such a circumstance is to be decided on a case-by-case basis. In *Lassiter*, the court concluded due process did not require the appointment of counsel to Lassiter, and the reasoning was based largely on Lassiter's inaction with respect to seeking counsel that demonstrated to the court that she was not interested in the proceedings concerning her son. In other words, the *Lassiter* court held that based on Lassiter's *inaction*, due process did not require the appointment of counsel under the facts presented; ergo, Lassiter did not have a constitutional right to counsel that she had to intentionally abandon by an affirmative action * * *." (Emphasis sic.). *In re G.S.*, 2011-Ohio-2487, at ¶16.

{¶20} Given *Lassiter*, if an indigent parent makes a timely request for appointed counsel the juvenile court is obligated to appoint; but, a parent can waive the right by not invoking it in a timely manner. *See In re Westfall*, 5th Dist. Stark No. 2006 CA 00196, 2006-Ohio-6717, ¶9-10; *In re G.S.*, at ¶7.

{¶21} A similar result was reached by the Ohio Sixth Appellate District. *In re Jeffrey D.*, 6th Dist. Lucas No. L-97-1012. 1997 Ohio App. LEXIS 4386, (Sept. 30, 1997). The father was incarcerated in a state prison when the children services board sought to amend its complaint to seek permanent custody. The father was served with the amended complaint, and the accompanying summons had language informing him of his right to appointed counsel and a contact to request counsel. The father took no action. On appeal, the court rejected his due process violation argument. "Appellant was given the opportunity to assert his right to counsel and simply failed to do so." *Id.*

6

at *5.

{¶22} Our case is very similar. Appellant was served with the board's permanent custody motion informing him of his right to counsel and instructing him how to invoke that right and obtain appointed counsel. Notwithstanding, six months passed between the service of the permanent custody motion and the hearing without a request for counsel.

{¶23} The trial court had no obligation to appoint an attorney to represent appellant in the absence of a request. To this extent, appellant has not demonstrated a due process violation warranting reversal.

{¶24} Appellant's sole assignment of error is without merit and the trial court's judgment is affirmed.

CYNTHIA WESTCOTT RICE, P.J.,

TIMOTHY P. CANNON, J.,

concur.

7